# First National Bank of Birming- ham *v.* Allen.

*Action of Assumpsit by Depositor to Recover for Moneys Paid by Bank on Forged Checks.*

1. *Duty of depositor to examine pass book and vouchers.*—A depositor in a bank who has his pass book written up by the bank and receives it back with entries of debits and credits, and his paid checks as vouchers for the former, is bound personally, or by an authorized agent, and with due diligence, to examine the pass book and vouchers, and report to the bank without unreasonable delay any errors that may be discovered in them.

2. *Same; examination made by dishonest agent.*—Where a bank depositor has his pass book and vouchers which have been received back from the bank after the pass book was written up by it, examined by an agent and among such vouchers are paid checks which had been forged by such agent the depositor, or principal, is chargeable with the facts within the knowledge of such agent at the time of the examination of the pass book and vouchers, and which should have been commun cated to the bank.

3. *Same; liability of depositor to bank for failure to make examination.*—Where a bank depositor fails to examine with due care and diligence his pass book and vouchers after the pass book has been posted and, with the vouchers, returned to him by the bank, and to report to the bank any errors that may have been discovered, and the bank is injured by such omission of duty, such depositor is liable to the bank for the loss sustained by it from such neglect of duty.

4. *Same* —Although a depositor may have failed in his duty of examining his pass book and returned checks, or did not exercise due care in the examination, or having knowledge of a forged check, failed to make it known to the bank, and thereby incurred liability to the bank for an omission of duty, yet, if after such liability has accrued, the money paid on such forged check, in whole or in part, is recovered by the bank the damage sustained by the bank by reason of the depositor's negligence is not the whole amount wrongly paid on the forgery but the difference between that amount and the amount recovered back by the bank.

5. *Liability of bank for money paid on forged checks.*—Where in an action against a bank to recover a deposit it appears that the money was paid out by defendant upon checks to which plaintiff's name was forged by his clerk; that the forgeries covered a period of six months; that monthly during this period defendant furnished plaintiff a statement of his account, and returned him all checks that it had paid on the account; the bank is only liable for payments made before the furnishing of the first monthly statement.

6. *Same.*—Though, in an action against a bank to recover a deposit paid out by defendant upon checks to which plaintiff's name was forged by his clerk, it appeared that it was plaintiff's custom, on signing a check, to enter the amount and number of the check on the stub of the check, and that the checks as paid by defendant were

VOL. C.

[First National Bank of Birmingham v. Allen.]

"raised" by the clerk after they had been so signed, entered and num-
bered, defendant's liability is not to be determined, the checks them-
selves having disappeared, by charging it with the amount a check as
paid exceeded the amount as entered on the stub, where the evidence
showed that the clerk made out several checks, and then destroyed
them because the signature was bad, leaving the amount on the
stubs; and the plaintiff was unable to distinguish between the genuine
and the forged stubs.

7. *Counter claim in favor of bank arising from depositor's omission
of duty.*—Where upon plaintiff's discovery of forgeries, he caused
his clerk's arrest, who then had upon his person eight forged checks,
and the defendant bank in ignorance of the fact that it had been
paying forged checks, made good the amount of the eight checks to
plaintiff; as defendant was only liable for payments made before the
furnishing of the first monthly statement, the amount made good for
the eight checks (if its payment resulted from plaintiff's omission to
properly examine his pass book and vouchers prior to that time, and
to make known to the bank the existence of previously forged checks,)
would, under proper pleas, be available to the bank as a counter
claim.

8. *Test question to witness.*—In an action against a bank to recover
a deposit paid out by defendant on checks to which plaintiff's name
was forged, plaintiff may be asked by defendant to point out in a
package of checks, part of which are genuine and part forged, the
genuine from the forged.

9. *Proof of handwriting by comparison.*—The rule which prohibits
a non-expert from giving an opinion based upon a comparison of
handwriting has no application where the party whose name is signed
is himself being examined as to whether the signature is his signa-
ture or not.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

Appellee, B. M. Allen, sued the First National Bank of
Birmingham, to recover a certain sum of money, which
plaintiff claimed he had deposited in the said bank, and
which he alleged the bank had paid out on forged checks.

The complaint contained three counts. The first claimed
$500 due by account; the second, $500, due by stated ac-
count; and the third claimed $500, as money deposited with
the defendant by plaintiff payable to his order. The cause
of action was based on alleged forged checks, which the
defendant bank had charged to the account of the plain-
tiff. The defendant pleaded, 1st, the general issue; 2nd,
payment; 3rd, a general denial of the allegations of the
complaint, and five special pleas, marked A, B, C, D, and E.
Demurrers were sustained to pleas A, B, C, and D, and were
overruled as to plea E; and upon the amendment of plea D,
issue was joined on pleas 1, 2, 3, E and D as amended.

The tendencies of the testimony are sufficiently stated in
the opinion.

The cause was tried without the intervention of a jury,
and judgment was rendered for the plaintiff.

[First National Bank of Birmingham v. Allen.]

E. K. CAMPBELL, for the appellant, argued and cited the following points and authorities : 1. The relations of banks and their depositors are those of debtors and creditors. 2 Morse, Banks (third edition), sec. 558. 2. The balancing of the depositor's pass book and its return with the vouchers or paid checks by the bank constitute an account stated, and cast on him the burden of impeaching its correctness.—2 Morse, Banks, etc. (third edition), 756 ; *Leather Manufacturer's Bank ·v. Morgan*, 117 U. S., 96. 3. There was a duty growing out of the relations of plaintiff and defendant which called for an examination by him of the returned vouchers and pass-book.—*Leather Manufacturer's Bank v. Morgan*, 117 U. S., 96; *Am. Nat. Bank v. Bushey*, 45 Mich. 140; *Dana v. National Bank*, 132 Mass. 158; *Hardy v. Chesapeake Bank*, 51 Md. 562. 4. If plaintiff committed the examination to his clerk, he is bound by the knowledge which the examination by himself would have disclosed. *Dana v. National Bank*, 132 Mass. 156; *Leather Manufacturer's Bank v. Morgan*, 117 U. S., 96. 5. If the depositor was negligent, or failed in his duty in reference to examining his pass-book and vouchers, and if by reason of any negligence on the part of the depositor, or by reason of his delay in examining or reporting errors in his bank account when the pass-book and vouchers are returned, the bank sustains damages or loss which it otherwise would not have sustained, the depositor may be held to have ratified the payments by the bank or be estopped to deny them. *Leather Manufacturer's Bank v. Morgan, supra; Weinstein v. National Bank*, (Texas), 6 S. W. R. 171; *Janin's case* (California), 27 Pac. Rep. 1,100, and other cases' cited (3) above ; 2 Morse, Banks, etc. (third edition), 755 ; 3 Am. & Eng. Enc. Law, 223; Title, Checks ; *DeFariet's case*, 23 La. An. 310. 6. It is not necessary that it should be made to appear by evidence that benefit would certainly have accrued to the bank from an attempt to secure payment from the alleged forger.—*Leather Mannfacturer's Bank v. Morgan*, U. S. Rep. (Lawy. Co-Op. Ed.), Book 29, page 818.

B. M. ALLEN, for the appellee, argued and cited the following points and authorities—The defendant was liable at any time to plaintiff for the aggregate amount of all sums of money deposited with it, less the amounts paid to plaintiff, and less the amounts of checks drawn on it by plaintiff. The balancing of plaintiff's pass book and returning same to him, with the cancelled checks or vouchers, had no other effect than to render said balances accounts stated, subject

to correction. The plaintiff having received and accepted
said balances as a correct statement of his account, the bur-
den of proof is on him to show errors in the same.—*First
Nat. Bank v. Whitman*, 94 U. S. 343; *Mahattan Co. v. Lydig*,
4 Johns, 377; *Phillips v. Belden*, 2 Edwards Ch., 1; *Kinsman
v. Barker*, 14 Vesey, 578; *Bullock v. Boyd*, 2 Edwards Ch.
293; *Barrow v. Rhinelander*, 1 Johns Ch., 550; *Sherman v.
Sherman*, 2 Verm, 276; *Perkins v. Hart*, 11 Wheat, 237; *Hall
v. Hase*, 10 Mass., 40; *Salem Bank v. Gloucester*, 17 Mass.—
If the defendant bank paid forged checks and charged them
to plaintiff, it must be the loser. It must know the signa-
tures of its depositors. The plaintiff was under no obliga-
tion to the bank to examine his pass book and vouchers.
*Weisser's Admrs. v. Denison*, 10 N. Y., 68; *Welch v. German
Am. Bank*, 73 N. Y., 424; *Manuf'tr's Nat. Bank, v. Barnes*
65 Ill., 69. The rule is that errors not injurious to the party
complaining will not avail to reverse, and is applied against
the defendant when the uncontroverted evidence negatives
or fails to establish his defense, and establishes the plain-
tiff's right of recovery.—*Leonard v. Storrs*, 31 Ala. 488;
*Donley v. Camp*, 22 Ala. 659; *McTyer v. McDowell*, 36 Ala.
39. It was immaterial whether the alleged forgeries were
skilfully executed or not; neither was it material or relevant
whether plaintiff could, from the signature alone, testify
which were genuine and which were not, said signatures
being to checks not in controversy, nor sued on in this ac-
tion. Defendant in error is not estopped. Each forgery
was an independent one; each payment was a wrongful one
on the part of the bank. It has no right to claim that they
would not have paid other forged checks if depositor had
informed it of the wrongful acts of his clerk. The doctrine
of estoppel invoked by plaintiff in error cannot prevail, be-
cause there is nothing to show that had the bank had ear-
lier knowledge, it could have recouped against the forger.
*Ketchum v. Duncan*, 96 U. S. 659; Herman on Estoppel, pp.
8, 334 and 335; *Dezell v. Odell*, 3 Hill, 222; *People v. Brown*,
67 Ill., 435; *Martin v. Zellsbach*, 38 Cal., 300; *McKenzie v.
British Linen Co.*, House of Lords, 44 Law Times, N. S. 431.
The balancing of the depositor's account and the rendition
of the vouchers, including the forged ones, only makes an
account stated. The depositor is not bound personally to
examine the same. If the examination is confided to a clerk
it is sufficient. If the clerk uses his position to perpetrate
forgery, the loss is still on the bank.—*Weisser's Admrs. v.
Denson*, 10 N. Y., 68; *Welch v. German Am. Bank*, 73 N. Y.,
424; *Frank v. Chemical Nat. Bank*, 84 N. Y., 209; *Manu-*

*facturer's Nat. Bank, v. Barnes,* 65 Ill. 69 ; Morse on Banks, p. 358; *First Nat. Bank v. Tappan,* 6 Kan., 456.

When forged checks have been paid and charged to the account of the depositor and returned to him, he is under no duty to the bank to so conduct the examination that it will lead necessarily to the detection of the fraud. It he examines the vouchers personally and is himself deceived by the skilful character of the forgery, his omission to discover it will not shift upon him the loss which, in the first instance, was the loss of the bank.—*Frank v. Chemical Bank of N. Y.,* 94 N. Y., 209. The plaintiff was not chargeable with notice of the wrongful acts of Tomlin; such acts were not within the scope of his agency or employment. *Weisser v. Denison,* 10 N. Y., pp. 76–77; *Foster v. Essex Bank,* 17 Mass., 478; *Lewis v. Read,* 13 Mees. & Wels., 834; *Lyons v. Martin,* 8 Ad. & E. 572 ; *Schmidt v. Blood,* 9 Wend., 268 ; *Vanderbilt v. Richmond Turnpike Co.,* 2 N. Y. 479.

COLEMAN, J.—The plaintiff, Allen, a depositor sued to recover money which had been paid by the defendant bank upon checks to which plaintiff's name had been forged, by his clerk Tomlin. The forgeries covered a period extending from about the 5th of September, 1890, to March 4th, 1891, at which latter point of time the forgeries were first actually known to the depositor. It was a rule of the bank about once a month, to post up the depositor's pass book and render him a statement, showing the deposits and checks and the balance. This rule was observed regularly in this case, and the forged checks, with other vouchers, were delivered to the depositor monthly from September 1890, to March 4th, 1891, with his pass book. The material defense of the defendant is stated in its special pleas marked D and E, the former of which, after stating the rule of the bank and the rendition of the monthly statement, and facts to show it acted with due care, avers that the plaintiff was negligent in his duty in not making proper examination of the monthly accounts rendered the plaintiff, and vouchers, which would have led to the discovery of the forgeries, and prevented the consequent loss to defendant. The latter plea (E) avers substantially that defendant was furnished with the means in the pass book and vouchers to detect the forgeries, and was so chargeable with notice thereof, and a neglect of duty on the part of the plaintiff to the defendant in not discovering the forgeries and informing the defendant, in time to prevent the successful repetition of forgeries and subsequent loss to defendant.

The court overruled a demurrer to these two pleas and issue was joined upon them. The case was tried without the intervention of a jury, and judgment rendered for the plaintiff, from which judgment the defendant appeals.

It will be seen from this statement of the pleadings that the defendant received the benefit of the principle of law invoked by the defendant in pleas D and E, that a depositor owes a duty to the bank to examine within a reasonable time and with due care, the account rendered in the pass book and the vouchers returned by the bank to the depositor. We will refer to this principle again. As the court found for the plaintiff it must have found that the plaintiff, under the facts, was not negligent, and was not chargeable with knowledge of the forgeries in time to have prevented loss to the defendant, in consequence of forgeries perpetrated, after the return of prior forged checks to the depositor with his pass book.

Were the conclusions of the court authorized by the evidence? If as matter of law, as is insisted by the plaintiff, Allen, that the depositor owed no duty to the bank to examine the vouchers, then the conclusion of the court must be sustained, upon this principle, however negligent the depositor may have been in his examination of the pass book and vouchers. On this proposition the authorities are not in harmony. The case of *Weisson v. Dennison*, 10 N. Y. 69, may be considered as an authority, sustaining the proposition that a depositor owes no duty to the bank, in the matter of the examination of the pass book and vouchers. In the same line, but not so positive, may be cited *Welsh v. German American Bank*, 73 N. Y. 424; *Frank v. Chemical Bank*, 89 N. Y. 209; *Manufacturing Bank v. Barnes*, 65 Ill. 69.

In the case of *Frank v. Chemical Bank, supra*, we observe the court uses this language : "It does not seem to be unreasonable in view of the character of business, and the custom of banks to surrender its vouchers, on the periodical writing up of the account of its depositors, to exact from the latter some attention to the account when it is made up, or to hold that the negligent omission of all examination, may, when injury has resulted to the bank which it would not have suffered, if such examination had been made, and the bank had received timely notice of objections, preclude the depositor from afterwards questioning its correctness." In a yet later case *Shipman v. Bank*. 126 N. Y. 318, by a careful reading, it will be seen, that while the court held to the rule, that the bank must know the signature of its depositors and must ascertain at its peril that the payee has in fact

endorsed the check, it does not affirm the rule that a depositor owes no duty to the bank to examine the account and checks returned. On the contrary the conclusion of the court is rested upon the fact, that the agent of the depositor whose duty it was to examine the account as stated and the checks returned, did his duty fully, and that notwithstanding the performance of his duty in this respect, the forgeries escaped detection. In the case last cited, (126 N. Y.) the facts show that it was not the duty of the forger who was also in the employment of the plaintiff, to examine the pass book and vouchers, but this duty devolved upon another employe. These New York cases were fully reviewed in the case of *The Leather Manufacturers Bank v. Morgan*, 117 U. S. 96, in which a different rule is declared and it is held that "A depositor in a bank, who sends his pass book to be written up and receives it back with entries of credits and debits and his paid checks as vouchers for the latter, is bound personally, or by an authorized agent and with due diligence, to examine the pass book and vouchers and report to the bank without unreasonable delay any errors which may be discovered in them; and if he fails to do so, and if the bank is thereby misled to its prejudice, he can not afterwards dispute the correctness of the balance shown by the pass book.

The case of *Dana v. National Bank*, 132 Mass. 156, was one in which one Piper the clerk of the plaintiff, erased the name of the payee and inserted the name of "bearer" and himself received the money. This check was returned with the pass book and monthly statement as a voucher. The court uses this language: "The plaintiffs owed to the defendant the duty of exercising due diligence to give it information that the payment was unauthorized, and this included due diligence not only in giving notice after knowledge of the forgery, but also due diligence in discovering it. If the plaintiffs knew of the mistake, or if they had that notice of it, which consists in the knowledge of facts, which by the exercise of due care and diligence will disclose it they failed in their duty; an adoption of the check and ratification of the payment will be implied." And in the case of *Weinstein v. National Bank of Jefferson*, 69 Texas, 38; 5th Am. St. Rep. 23, the rule was distinctly recognized, that if loss or injury resulted to the bank in consequence of the negligence of the depositor to examine the account and vouchers within a reasonable time which duty if performed would have led to the detection of forged checks, and prevented the loss, such neglect of duty was available to the bank in a suit by

the depositor to recover the amount of the forged checks. So in the case of *De Fariet v. Bank of America*, 23 La. Ann. 310; 8 Amer. Rep. 597, it was held that a depositor should not recover the amount of a second forged check, he having failed to denounce as a forgery a previous check forged by his book-keeper, of which the depositor had knowledge, and failed to disclose the forgery of the first check to the bank. Other cases might be cited. The weight of authority, and the best considered cases hold, that the depositor owes a duty to the bank; and when the character of the business, the relations of the depositor and bank to each other, and the purpose for which at prescribed intervals the account is stated, and pass book and vouchers (the evidence of the bank) delivered to the depositor, are taken into consideration, the conclusion of these authorities is supported by sound reason and just principles.

Does the evidence show such omission of duty on the part of the plaintiff, as to make him liable, and did loss result proximately to the defendant from such omission? The evidence shows that on each occasion after the return of the pass book and checks, the plaintiff with the assistance of his clerk Tomlin, the forger, examined the account as rendered and the checks or vouchers. We may conclude the evidence shows that the plaintiff himself personally was without fault in this respect, and but for the fact that his clerk Tomlin was the forger, the false checks would have been discovered by the examinations which were in fact made. The evidence shows that in these examinations Tomlin either called from the pass book and the plaintiff the checks or *vice versa*, and Tomlin knowing when a forged entry or check was reached answered in such a way as to deceive the plaintiff. Tomlin the clerk and forger had knowledge of the forged checks; was such knowledge of the agent chargeable to his principal?

The case in 132 Mass. *supra*, holds that the principal is chargeable with notice under such circumstances, and we are of opinion, the conclusion is supported by reason and sound principles of law.

It is clear that in forging the checks, Tomlin did not act within the scope of his authority but upon what principle can it be said, that in the matter of examining the pass book and vouchers, he was not acting within the scope of his authority? He was appointed and directed by the plaintiff to do this very thing. If Tomlin had not been the forger and in no manner interested in concealing the forgeries, and, in making the examination of the pass book and vouchers, had

discovered that numbers of the checks were forgeries committed by other persons, would not such knowledge on his part be chargeable to the principal? The law is, that the principal is chargeable with the knowledge of such facts as the agent acquired acting within the scope of his business. Is the rule to be changed because of the dishonesty of the agent? His dishonesty can not change his relationship to his principal, to the detriment of third parties. If the duty would have been within the scope of an honest clerk, it is none the less within the scope of duty of a dishonest clerk. We have held that it was the duty of the depositor by himself or an authorized agent to examine the account and vouchers or checks. If the agent employed by him to perform this duty is culpably negligent, is not the principal to held liable for such want of due care on the part of the agent? Or if the agent in making such examination, detects palpable forgeries, is not the principal chargeable with the knowledge of his agent? It can make no difference that the agent himself was the forger and did not act within the scope of his authority in perpetrating the forgery. He was acting within the scope of his employment in the examination of the vouchers, and it then became his duty to his employer to make known the forgery as much so, as if the forgeries had been perpetrated by some other person which were discovered by him in the examination made. Our opinion is that under the circumstances the plaintiff was chargeable with the facts within the knowledge of his agent and clerk at the time of the examination of the pass book and vouchers, and which should have been communicated to the principal or the bank. Certainly the bank should not suffer, because of the fact that plaintiff's dishonest clerk, prevented the plaintiff from doing his duty to the bank.—132 Mass., *supra*. What is the proper measure of relief to which the bank is entitled in such cases? Some of the courts have held that if injury results to the bank by the negligence of the depositor, he will be held to have adopted and ratified the payment of the forged checks.

By others under like circumstances the doctrine of estoppel has been applied, and the depositor held to be estopped from asserting a claim to the money paid on the forged checks. We do not think that either the doctrine of ratification or estoppel can be applied as a just and equitable principle in all cases. Ratification refers to a past act or transaction, and as now being considered refers to the unauthorized act of an agent, or the adoption of a past act or transaction as his own act, made or executed by another who

VOL. C.

was not an agent. It would strain the doctrine of ratifica-
tion to hold that a person had ratified or adopted as his own
the unauthorized act of another, of which he had no infor-
mation, or which was promptly repudiated as soon as brought
to his knowledge. So where a bank pays a forged check
drawn in the name of one of the depositors, and the deposi-
tor is wholly free from neglect or fault, the bank owes the
amount to the depositor. There was no act, omission to
act, or silence in such a case on the part of the depositor
which induced the bank to pay the forged check, or influenced
the action of the bank in the payment of the check. No
principle of the law of estoppel can be invoked by the
bank against the depositor under such circumstances. The
depositor owed the bank a duty which was to examine the
pass book and vouchers with reasonable care and diligence.
If the depositor failed in his duty in this respect, and the
bank was injured in consequence of such omission of duty,
the depositor became liable to the bank for all such damage.
The extent of the liability of the depositor is commensurate
with the loss sustained in consequence of his neglect of
duty, no more, no less. It would be unjust, unfair to the
depositor, not sanctioned by any correct principle of law, to
permit the bank to invoke the doctrine of ratification or
estoppel which would exempt the bank from all liability in-
curred by its own neglect in the payment of the forged
check, and in many cases inflict upon the depositor a greater
loss than that caused to the bank by his neglect of duty.
The damages sustained by the bank as the result of neglect
of duty by the depositor, are as susceptible of proof and
measurement, as arise in any other case of breach of duty
imposed by contract. The pleadings may be framed to
present the issue in a proper manner.

An account rendered, to which no objection is made after
a reasonable time allowed for examination will be held in
law as *prima facie* correct, but the presumption may be
overcome by proof, either when the debtor is sued upon the
account, if there is an error to his prejudice, or by the plain-
tiff by suing for the proper amount. An action for money
had and received is not barred in this State until six years
have expired, and up to that time a stated account is open
to rectification upon proof. Neither will the fact that the
bank has by mistake omitted, from the account rendered
and vouchers returned, a proper charge, prevent the bank
within any reasonable time, from correcting the error, and
recovering back the omitted check, no injury having resulted
to the depositor. Although a depositor may have failed in

his duty in not making the examination of his pass book and vouchers, or did not exercise due care in the examination, or having knowledge of a forged check failed to make it known to the bank, and thereby become liable to the bank for an omission of duty, yet if after this liability has accrued, the forger is arrested, and the money in whole or in part, is recovered by the bank, the damage to the bank by reason of the negligence of the depositor is not the whole amount wrongly paid out on the forgery, but the difference between that amount and the amount recovered back by the bank. So also if the depositor makes timely discovery of the forgery and discloses it to the bank, the bank is liable for the whole amount of the forged check, to the depositor, notwithstanding by all diligence the bank failed to realize anything from the forger. The correct principles by which the respective liabilities of the bank and depositor are determined are these. The bank is bound to know the signature of its depositors and the payment of a forged check, however skilfully executed, can not be debited against the depositor. From the relations the depositor and the bank bear to each other, there is a duty also upon the depositor to examine his account and vouchers, and to make known to the bank any improper vouchers or charges returned, and where injury results to the bank from the failure of the depositor to do his duty in this respect the law holds the depositor liable, for such injury, the result of the depositor's omission.

These principles of law apply in the present case to the forged checks which were paid by the bank in the first instance, and before the plaintiff was chargeable with knowledge of the forgery. Their application violates no established rule of law, gives neither an undue advantage of the other, and holds both responsible for the obligations growing out of their respective relations to each other.

The evidence shows that several checks were forged by Tomlin and paid by the bank subsequent to the time that Allen the plaintiff was chargeable with notice that his clerk was making such unauthorized use of his name. As to all such subsequent payments of forged checks the bank is entitled to invoke the equitable doctrine of estoppel. As to these it may be fairly said the bank was induced to pay and did pay in consequence of the silence of the plaintiff when it was his duty to speak. The bank was *misled* to its injury, by the fault of the depositor. A very interesting and instructive collection of leading cases on the questions under

[First National Bank of Birmingham v. Allen.]

consideration may be found in the 26th volume of American Law Review for March and April, 1892, page 274.

We cannot believe from the evidence that if the plaintiff had promptly made known to the bank the forgeries of his clerk, at the time he was chargeable with a knowledge of their existence, the subsequent forgeries could have been successfully carried out. The evidence shows that upon this discovery of the forgery the plaintiff had Tomlin arrested, but his arrest and even his conviction, would not necessarily re-imburse the bank, or exclude the doctrine of estoppel, and as to the subsequently forged checks, we cannot see that the bank was under any obligation to prosecute the forger. As to the subsequent forged checks the fault was with the depositor.

Our conclusion is the evidence supported the special plea E, of the defendant. We are of opinion the court erred in arriving at the balance of money due the plaintiff. The evidence is not as clear as it might be made, but as we understand the record it shows that the forged checks, the cause of the present action had been abstracted from the plaintiff's book, presumably by his clerk, who had access to it, and the vouchers at all times. The plaintiff had a check book with marginal space on which was entered the number of the check, the name of the payee, the amount of check and date, and when the check was taken off, the stub showed these memoranda, and plaintiff testified that he was careful in every instance before signing the check, to see that it corresponded with the stub. The balance against the bank was ascertained by charging to the bank payments made on checks, for which there were no corresponding *amounts* entered on the stub of plaintiff's check book. Under the evidence in this case, we do not think this was sufficient data upon which to base a charge, for the following reasons: Tomlin introduced as a witness by plaintiff, testified "that he frequently filled out the stubs, and also the checks for plaintiff's signature, but that he, Tomlin, had no authority to sign plaintiff's name; that several times in attempting to sign plaintiff's name he had not made what he considered a skilful forgery, and he destroyed such checks without uttering them, and that the stubs corresponding with such checks were left in the check book filled out." "That *sometimes* when he committed a forgery he wrote the stub for one amount and the check for a different amount." It seems that neither the plaintiff, nor the witness Tomlin, by an examination of the stub of the check book could point out the instances in which forged checks were uttered.

The defendant's evidence showed that his cash book did not disclose to whom the money on checks was paid, but only the date and amount "that there were the same number of stubs on the plaintiff's check book, as there were of charges on the bank book, but the several sums on the stubs were not the same, but usually smaller than the charges on the bank book." Ordinarily it would seem that the plaintiff ought to be able to ascertain to whom he was indebted, and the amount of such indebtedness ; and if he did not have the data himself, the payee as shown by the stub on the the check book, was competent to testify, and ought to be examined on this point. If a genuine check was signed, and the amount raised by Tomlin, and the payee, in fact received the amount due him, the drawer's loss would be, the difference between the amount expressed in the check as originally drawn, and the amount paid by the bank and charged to the drawer. We do not know that any such case exists, but in view of the evidence that the checks paid by the bank were returned as vouchers to plaintiff, and while in his possession were lost or stolen, and as plaintiff, by an examination of the stubs of his check book alone, could not determine which were genuine and which were false checks, and as there were stub entries corresponding in number, but not in amounts to those paid by the bank, and as the plaintiff's clerk and witness, himself, was the forger and testified that sometimes the check was altered by inserting a larger amount than entered on the stubs of the check book, we are of opinion the payees of the check as shown by the stub should have been examined, if within the jurisdiction of the court. Without some proof that the depositor did not owe and draw checks as shown in the stubs, the court was hardly authorized to charge the bank with the full amount of a payment, simply because the stub of the check book showed no corresponding amount, when there was a stub which corresponded in number but for a less amount. If the stubs corresponding in number was conclusive to show the check was forged because the check called for a larger amount than the stub, it would not follow from this fact alone that the stub also was a forgery. There should be other evidence introduced on this point. The evidence shows that when Tomlin was arrested in March, 1891, he then had on his person eight of the last forged checks. In ignorance of the fact that the bank had knowingly paid forged checks drawn by Tomlin covering a period from September 7th, previous to the date of these forged checks, the bank promptly made good to the deposi-

tor the amount of the eight checks found on the person of Tomlin. If the payment of these eight checks by the bank resulted from the omission of duty on the part of the plaintiff properly to examine his pass book and vouchers prior to that time, and his neglect, if he was guilty of such neglect, in not making known to the bank, the existence of previous forged checks, and if the money was paid under a mistake of fact, without notice, there is no legal reason why the amount of the eight checks, do not constitute the basis of a counter claim, available to the defendant under proper pleas. This conclusion would follow from the principles we have laid down as law. There was no error in holding that checks which the stubs of the check book showed were in favor of the city employes were forgeries, as we construe the evidence on this point. Plaintiff testified positively, that he kept an order book also with a margin for stubs. That whenever he loaned or advanced money to a city employe he invariably took the order of the borrower on the city treasurer, in the order book, and that on the stub of the order book, the name of the employe, the date and amount were entered, at the time of giving a check on the bank to such employe, and that there were no entries on the stub of the order book, to correspond with the stub of the check book. From these data, the plaintiff testified positively as to such checks, and thus supplied the omission which occurred as to the stubs in the check book of which he was unable to say whether he had signed checks or not, and which in number corresponded with checks paid by the bank, the difference being that the amounts did not correspond.

Only one other question remains to be considered. The defendant took some of the checks found on the person of Tomlin, and which were forgeries, and others admitted to be genuine, and arranged them, so that nothing but the signatures of the drawer could be seen, and plaintiff was requested to point out the genuine and false checks. The plaintiff objected to this evidence and the court sustained the objection. We think this testimony admissible. It is a circumstance that the jury or court should consider in weighing his evidence. The inability of the plaintiff to distinguish the true from the false signatures would not be conclusive against him. He might be able to show by other evidence that certain checks were forged, although he could not himself determine the question by an examination of the signature. Doubtless in many cases a person's name is so skilfully forged, that he could not distinguish it from his

[Georgia Pacific Railway Co. v. Ross.]

own proper signature, and yet, he may know from the amount, or payee, or other facts, absolutely that the instrument was forged. We think however the fact that he can not distinguish a signature which he admits to be genuine, from that alleged to be false is a circumstance. The rule which prohibits a non-expert from giving an opinion based upon a comparison of handwriting has no application where the party whose name is signed, is himself being examined as to whether the signature in question is his signature or not.

Reversed and remanded.