# Richmond.

FIRST NATIONAL BANK OF RICHMOND, VIRGINIA, v. RICHMOND
ELECTRIC COMPANY.

103   347
f109   533

January 17, 1907.

1. BANKS AND BANKING—*Forged Checks—Pass Book and Vouchers Returned—Duty of Depositor.*—A bank depositor is under obligations to the bank to examine within a reasonable time and with ordinary care the account rendered in the pass book and the vouchers returned by the bank to him, and to report any errors discovered without unreasonable delay. The examination need not be so minute as to exclude any possibility of error, but it should be made in good faith and with ordinary diligence, and such care should be used as is required by the circumstances of the particular case. It need not be made by the depositor himself, but may be entrusted to any competent person. Whether reasonable care and diligence was used in any given case is a question for the jury, under proper instructions from the court.

2. BANKS AND BANKING—*Forged Checks—Returned Vouchers.*—If before paying an altered check drawn upon it, the officers of a bank could, by the exercise of proper care and skill, have detected the forgery, then the bank cannot receive credit for the amount of the check even if the depositor omitted all examination of his account returned to him by the bank.

3. BANKS AND BANKING—*Forgery by Depositor's Clerk—Examination of Vouchers by Same Clerk.*—A clerk is not the agent of his principal in the commission of a forgery, and his knowledge cannot be imputed to the principal; but, after forged checks have been paid and returned to the depositor as vouchers, along with his account written up and balanced according to usual business methods, if the depositor assigns the duty of examining such vouchers and account to the same clerk, who has had an opportunity of committing a fraud and has done so, then such clerk, in the discharge of this duty, is the agent of the depositor, and the latter is chargeable with his agent's knowledge of the fraud.

Error to a judgment of the Circuit Court of the city of Rich-

mond in an action of assumpsit.    Judgment for the plaintiff.
Defendant assigns error.

*Reversed.*

The opinion states the case.

*George Bryan* and *A. W. Patterson,* for the plaintiff in error.

*Leake & Carter* and *W. B. Tennant,* for the defendant in
error.

HARRISON, J., delivered the opinion of the Court.

The electric company, plaintiff, kept an active account with
the defendant bank, and this action is to recover a balance of
deposit alleged to be due it from the bank.    This alleged bal-
ance was brought about by the bank having paid a number of
checks, the amount of which had been raised after being signed
by the plaintiff.

It appears that the plaintiff had in its employ a clerk named
Woodall.    Once a week the electric company issued its check
for a sum sufficient to cover its weekly pay-roll payable "to the
order of pay-roll."    Its clerk and cashier, Woodall, presented.
these checks to the bank for payment.    In July, 1903, the plain-
tiff discovered that Woodall had since December, 1901, a period
of about eighteen months· been defrauding it by raising twenty-
six of these pay-roll checks by the sum of one hundred dollars
each.    Upon this discovery Woodall became a fugitive from
justice and has not since been apprehended.    The bank resisted
a demand upon it for the amount of these fraudulent altera-
tions, upon the ground that the account of the electric company
with it had been settled monthly during the eighteen months,
its pass book written up and the fraudulently altered checks
returned with the book, and no report of the fraud had ever
been made to the bank.    Inquiry developed the fact that, after
being returned, Woodall had destroyed all of the altered checks

except two, which had not been returned by the bank at the time of his flight.   It further appears that Woodall, in order to conceal his fraud would make false additions of the checks given, on the stubs of the plaintiff's check book, thereby making the aggregate there shown correspond with the pass book. Such examination of its pass book as was made by the plaintiff consisted of the president of the company, together with Woodall, comparing at times the pass book with the stubs of the check book.   In doing this Woodall would sometimes hold the pass book and sometimes the check book, while the president would hold the other, thus enabling Woodall to call out in either case from the book held by him the figures so as to make the amount correspond with the book held by the president.   In this way every time the examination took place the pass book as balanced and the check book were made to agree.   It further appears that the fraud could have been instantly discovered by verifying the additions made by Woodall on the stubs of the check book, or by the president looking at both the pass book and the check book on any one of the occasions when the examination was made by Woodall and himself together.

That banks, in their relations with depositors, are held to a rigid responsibility is a proposition established by practically an unbroken current of authority.   *National Bank* v. *Nolting,* 94 Va. 263, 26 S. E. 826.   Some of the earlier cases seemed to go to the extent of holding that a depositor was under no duty to the bank to examine periodical statements of his account, with the vouchers, and give notice to the bank within a reasonable time of errors discovered therein.   Modern adjudications, however, of the highest authority, do not sanction this broad proposition.   *Bank* v. *Morgan,* 117 U. S. 96, 29 L. Ed. 811, 6 Sup. Ct. 657; *Bank of Birmingham* v. *Allen,* 100 Ala. 476, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80; *Dana* v. *Bank,* 132 Mass. 156; *Myers* v. *Bank,* 193 Pa. St. 1, 44 Atl. 74; *Scanlon-Gipson Co.* v. *Bank,* 90 Minn. 478, 97 N. W. 380.

The facts in most of the cases cited are very similar to those in the case at bar, in some of them almost identical.

Mr. Justice Harlan, delivering the opinion of the Supreme Court in *Bank* v. *Morgan, supra,* says: "The court below, as shown by its opinion, proceeded upon the ground that Cooper was under no duty whatever to the bank to examine his pass book and the vouchers returned with it, in order to ascertain whether his account was correctly kept. For this reason, it is contended, the bank, even if without fault itself, has no legal cause of complaint, although it may have been misled to its prejudice by the failure of the depositor to give timely notice of the fact, which, by ordinary diligence, he might have discovered on the occasion of the several balancings of the account that the checks in question had been fraudulently altered. This view of his obligations does not seem to the court to be consistent with the relations of the parties, or with principles of justice." This learned jurist further says: "While it is true that the relation of a bank and its depositor is one simply of debtor and creditor, and that the depositor is not chargeable with any payments except such as are made in conformity with his orders, it is within common knowledge that the object of a pass book is to inform the depositor from time to time of the condition of his account as it appears upon the books of the bank. It not only enables him to discover errors to his prejudice, but supplies evidence in his favor in the event of litigation or dispute with the bank. In this way it operates to protect him against the carelessness or fraud of the bank. The sending of his pass book to be written up and returned with the vouchers is, therefore, in effect, a demand to know what the bank claims to be the state of his account. And the return of the book, with the vouchers, is the answer to that demand, and, in effect, imports a request by the bank that the depositor will, in proper time, examine the account so rendered, and either sanction or repudiate it. . . . The depositor cannot, therefore, without injustice to the bank, omit all examination of

his account when thus rendered at his request. His failure to make it or to have it made, within a reasonable time after opportunity given for that purpose, is inconsistent with the object for which he obtains and uses a pass book."

In *Dana* v. *Bank, supra,* the Supreme Court of Massachusetts says: "The plaintiffs owed to the defendant the duty of exercising due diligence to give it information that the payment was unauthorized; and this included not only due diligence in giving notice after knowledge of the forgery, but also due diligence in discovering it. If the plaintiffs knew of the mistake, or if they had that notice of it which consists in the knowledge of facts which, by the exercise of due care and diligence will disclose it, they failed in their duty; and adoption of the check and ratification of the payment will be implied. They cannot now require the defendant to correct a mistake to its injury, from which it might have protected itself but for their negligence."

The other cases cited are equally conclusive upon the proposition that the depositor is under obligations to the bank to examine within a reasonable time and with ordinary care the account rendered in the pass book and the vouchers returned by the bank to the depositor, and to report any errors discovered without unreasonable delay. Upon this point the conclusion reached by those cases is, in our judgment, both reasonable and just, and the principle announced should be applied in determining the rights of the parties in the present controversy.

"In their relations with depositors, banks are held, as they ought to be, to rigid responsibility. But the principles governing those relations ought not to be so extended as to invite or encourage such negligence by depositors in their examination of their bank accounts as is inconsistent with the relations of the parties or with those established rules and usages sanctioned by business men of ordinary prudence and sagacity, which are or ought to be known to depositors. We must not be understood as holding that the examination by the depositor of his ac-

count must be so close and thorough as to exclude the possibility of any error whatever being overlooked by him. Nor do we mean to hold that the depositor is wanting in proper care when he imposes upon some competent person the duty of making that examination and of giving timely notice to the bank of objections to the account. If the examination is made by such an agent or clerk in good faith and with ordinary diligence, and due notice given of any error in the account, the depositor discharges his duty to the bank. But when, as in this case, the agent commits the forgeries which misled the bank and injured the depositor, and, therefore, has an interest in concealing the facts, the principal occupies no better position than he would have done had no one been designated by him to make the required examination; without, at least, showing that he exercised reasonable diligence in supervising the conduct of the agent while the latter was discharging the trust committed to him. In the absence of such supervision the mere dsignation of an agent to discharge a duty resting primarily upon the principal cannot be deemed the equivalent of performance by the latter. While no rule can be laid down that will cover every transaction between a bank and its depositor it is sufficient to say that the latter's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case, including the relations of the parties, and the established or known usages of banking business." *Bank* v. *Morgan, supra.*

"Of course if the defendant's officers, before paying the altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account." *Bank* v. *Morgan, supra.*

In the case at bar there was evidence tending to show that the plaintiff did not examine its pass book and the vouchers returned therewith with reasonable care and diligence; and did not exercise reasonable care and diligence in supervising the

conduct of its agent while the latter was examining such pass book and vouchers. Whether he did so exercise reasonable care and diligence was, under proper instructions, a question to be determined by the jury.

We are of opinion that the Circuit Court erred in refusing the following instruction asked for by the defendant:

No. 3. "The jury are instructed that the plaintiff is charged with such knowledge as Woodall had in making the examination of its bank book and the inspection of returned checks, and comparison of the same with the stubbs of plaintiff's check book."

As already seen, such examination of its pass book as was made by the plaintiff was together with Woodall as its agent. Woodall had, at the time these examinations were made, full knowledge of the forgeries, as he had himself been guilty of the wrongdoing.

In the commission of a forgery the employee is not the agent of his principal, and his knowledge cannot be imputed to the principal. But after the forged checks have been paid and returned to the depositor as vouchers, with the bank account written up and balanced according to the usual business methods, if the depositor assigns the duty of examining such vouchers and account to this same clerk, who has had an opportunity of committing a fraud and has done so, then such employee in the discharge of this duty is the agent of the depositor, and such depositor is chargeable with his agent's knowledge of the fraud. *Dana* v. *Bank, supra; Bank of Birmingham* v. *Allen, supra; Myers* v. *Bank, supra; Critten.* v. *Chemical Bank,* 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529; *Bank* v. *Morgan, supra.*

In *Bank of Birmingham* v. *Allen, supra,* it is said: "The evidence shows that on each occasion after the return of the pass book and checks, the plaintiff, with the assistance of his clerk, Tomlin, the forger, examined the account as rendered and the checks or vouchers. We may conclude the evidence shows that the plaintiff himself personally was without fault in

this respect, and but for the fact that his clerk, Tomlin, was the forger, the false checks would have been discovered by the examinations which were in fact made. The evidence shows that in these examinations Tomlin either called from the pass book and the plaintiff the checks, or *vice versa,* and Tomlin, knowing when a forged entry or check was reached, answered in such a way as to deceive the plaintiff. Tomlin, the clerk and forger, had knowledge of the forged checks; was such knowledge of the agent chargeable to his principal? The case in 132 Mass., *supra,* holds that the principal is chargeable with notice under such circumstances, and we are of opinion the conclusion is supported by reason and sound principles of law."

In *Critten* v. *Chemical Bank, supra,* it is said: "Of course the knowledge of the forgeries that Davis possessed, from the fact that he was the forger, was in no respect to be attributed to the plaintiffs. But we see no reason why they were not chargeable with such information as a comparison of the checks with the check book would have imparted to an innocent party previously unaware of the forgeries. The plaintiffs' position may be no worse because they intrusted the examination to Davis instead of to a third person; but they can be no better off on that account. If they would have been chargeable with the negligence or failure of another clerk in the verification of the accounts, they must be equally so for the default of Davis, so far as the examination itself would have disclosed the facts."

In the case of *Myers* v. *Bank, supra,* it is said: "While the plaintiff was not chargeable with the knowledge of his clerk that the latter had committed the forgery, he was clearly responsible for the acts and omissions of his clerk in the course of the duties with which he was entrusted—viz: to receive the checks from the bank, take them to his employer's office, compare the amounts thereof with the amounts in the bank book, check book, etc."

In the case at bar the instruction under consideration was

supported by the evidence, and the authorities cited show that it correctly stated the law.

We are inclined to think there was no error in the action of the Circuit Court with respect to other instructions, but as its judgment must be reversed for the error pointed out in refusing instruction No. 3, asked for by the defendant, we will not comment upon the other instructions objected to, but will leave the court, upon the evidence adduced at another trial, to give such instructions as to it may seem proper in the light of the principles herein announced.

The judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for further proceedings not in conflict with the views herein expressed.

*Reversed.*