## Deer Island Fish & Oyster Co. *v.* First Nat. Bank of Biloxi.

(Division A.  Feb. 20, 1933.)

[146 So. 116.  No. 30279.]

Mize, Mize & Thompson, of Gulfport, for appellant.

W. L. Guice, of Biloxi, and John L. Heiss, of Gulfport, for appellee.

Argued orally by **S. C. Mize**, for appellant, and by **W. L. Guice**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The Deer Island Fish & Oyster Company sued the First National Bank of Biloxi, Miss., alleging that said bank had paid forged checks from "funds belonging to it," amounting to two thousand three hundred eleven dollars and forty-seven cents, and setting forth, in the pleading, the dates of the checks, the payees therein, and exhibiting each forged check as a part of the declaration, in one

count. In another count to the declaration, it sued for payments made by the bank on forged checks, giving the amounts and the dates thereof, but alleging that the checks could not be produced, and were not in its possession. These aggregated seven hundred ninety-eight dollars.

The checks produced were many in number, beginning August 11, 1930, and ending January 27, 1931. In the count for the checks not produced, the first date was August 7, 1930; the last one was December 30, 1930.

To the declaration the defendant bank filed a plea of the general issue, giving notice thereunder to the effect that the bank was not liable because it had, on the first day of each succeeding month after the checks were paid out, furnished to the Deer Island Fish & Oyster Company a statement of its account, together with the checks paid out on its account, and that said company was negligent, to the injury of the bank, in not discovering the forgeries when the checks were delivered to it with the statement of account.

There were two trials of the case, on the first of which the jury returned a verdict for two thousand three hundred eleven dollars and forty-seven cents, the aggregate amount of the forged checks exhibited with the declaration, excluding those which were not so exhibited. Both the plaintiff and the defendant moved for a new trial; the plaintiff's motion being overruled, and the defendant's motion being sustained. The plaintiff requested, and was granted, a special bill of exceptions including therein the entire record of the first trial. On the second trial the jury returned a verdict for one thousand two hundred forty-three dollars and seventy-three cents. The plaintiff prosecuted an appeal to this court, and the defendant filed a cross-appeal.

We do not deem it necessary, in view of the conclusion we have reached in this case, to here detail the evidence. It is sufficient to say that as to the sum of two thousand

three hundred eleven dollars and forty-seven cents there is no doubt but that these checks were forged.

On the cross-appeal the defendant bank assigns several errors; but we shall notice only one, which is in this language: "No recovery should or could be had under this suit until the plaintiff in the court below. has produced evidence of the indebtedness of the bank to it or him, as a suit of this nature is always a suit for money due and the existence of a debt must first be shown."

We have carefully examined the evidence adduced at the two trials of the case, and we find that the statement of fact in the assignment of error is correct.

The strongest statement, perhaps, in the record is that the Deer Island Fish & Oyster Company was a depositor and deposited funds in the First National Bank; but the amounts and dates of the deposits are not shown by the record. In fact, it is not shown that the bank charged the checks to the plaintiff.

This court announced in the case of Moreland v. People's Bank, 114 Miss. 203, 74 So. 828, L. R. A. 1917F, 263, that the relation between a bank and its depositors was that of debtor and creditor. This view has been adopted by other courts. See Leather Mfrs. Nat. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811, and First National Bank v. Allen, 100 Ala. 476, 14 So. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80.

There is no admission in the pleadings, or otherwise, that the bank, at the date of the filing of this suit, owed the Deer Island Fish & Oyster Company any sum of money whatever. The voluminous record in this case is taken up with proof on the question of forgery, the identification of checks, and other documentary evidence.

In the second trial of the case, the plaintiff offered in evidence statements of account between it and the bank, rendered to it monthly, but with the limitation that the rule of the bank found printed on each statement was not to be considered as a part thereof, and was to be excluded

from the jury. The court held that the plaintiff must introduce the entire statement or none of it. Thereupon, the plaintiff declined to introduce the statements in conformity to the rule of the court. The statements of the bank were not in evidence, were not considered by the court below, and cannot be considered now by us.

The burden of proof was on the plaintiff in the court below to establish, by a preponderance of the evidence, the material allegations of the declaration, and to show that the bank was actually indebted to it in some sum; and it will not do to say that the mere proof that the complaining party was a depositor in the bank, showed or tended to show the state of accounts between the parties at the date the suit was instituted.

Generally, when a person deposits money, or its equivalent, in a bank, such as the defendant in this case, the relation of debtor and creditor is set up unless it is a special deposit of a particular thing. Such is not the case here. Title to the funds so deposited immediately vests in the bank, and whatever sum it pays upon a check of a creditor depositor is paid from funds of the bank, and thereupon, if properly paid, the bank has the right to charge the depositor with the amount of such payment. See authorities above cited.

Of course, it is quite well settled, and the general rule is, that a bank pays money upon a forged or unauthorized check at its own peril, and if it pays from its own funds it must lose unless there are exceptional circumstances to which we will advert, and which would absolve the bank from liability.

In the court below, the plaintiff failed to make out its case in each trial. On the second trial, the court overruled the bank's motion to exclude the evidence, and on both trials the court refused it a peremptory instruction. The evidence was at hand and available; and it is evident to us from the record that the plaintiff in the court below would, but for the above-stated reason, be entitled

to recover some amount. We therefore shall remand this case for another trial that justice may be done.

Having decided to remand this case, we now find it necessary to lay down certain applicable principles for its retrial, which are provoked by the briefs and arguments on direct and cross appeal.

The checks offered in evidence were forged. The name of Skrmetta, the president of the company, was subscribed thereto without his knowledge or consent.

Anderson, the bookkeeper of the company, testified in the first trial that he forged a certain check in November 1930, for which he had been indicted, tried, convicted, and was then serving his sentence. He claimed, and was accorded, immunity from testifying as to any other check. He had the complete confidence of his employer, who discovered the forgeries after he was discharged. The company dealt with many individuals. These checks were made payable to individuals with whom the company had been accustomed to deal, and all the payees thereof repudiated the several indorsements on the checks in the names of the payees appearing thereon. Most of the checks were also indorsed by Anderson, the bookkeeper.

Skrmetta, who really owned the business, did not make a close examination of his bank statements or compare the checks, but relied upon his dishonest bookkeeper for verification of his bank statements until he discharged him. Skrmetta signed no check unless the stub of his check book corresponded therewith in name of payee, date, and amount. Anderson, the bookkeeper, prepared the checks and the stubs of the check book preliminary to the signature of Skrmetta.

Skrmetta, an Austrian by birth, was an uneducated man. The volume of his business amounted to approximately one hundred thousand dollars annually. A number of these checks were forged each month from August 11, 1930, until January 27, 1931. All checks paid by the

bank, together with its statements of account showing debits and credits, were furnished to the company by the bank on or before the first day of the month following, were delivered by a messenger, and were receipted for either by Skrmetta or the bookkeeper, Anderson. Skrmetta knew that on occasions the bookkeeper drank to excess, but relied upon his competency and integrity. Skrmetta testified that the forgery, upon examination and comparison with his genuine signature, was discernible, and pointed out differences between the spurious and genuine signatures. Skrmetta had from time to time left his signature with the bank on a card furnished by the latter for that purpose, and the bank was instructed that no one else was authorized to draw checks for his company.

The bank was required *to know* the signatures of its depositors, and it cannot charge the depositors' accounts with checks paid by it, except upon the genuine or authorized signatures of the depositors if they are free from blame and have done nothing to mislead. In paying checks a bank acts at its peril, and, if not paid on genuine or authorized signatures, it pays out its own funds, and the loss is that of the bank. Its responsibility in such case is, and should be, rigid. Michie on Banks & Banking, vol. 5, p. 498, sec. 274.

The company, on its appeal, contends that a depositor is under no duty to examine a bank's statement and checks paid by the bank to ascertain if his name has been forged thereto, if the bank was negligent in the first instance; and it further contends that this court applies a more stringent rule against a bank than is found in other jurisdictions, that the depositor's negligence constitutes no defense, and relies upon the case of Masonic Benefit Association, etc., v. First State Bank, 99 Miss. 610, 55 So. 408, 413, for this position.

After a most thorough examination of that case, we are unable to agree with counsel. The forgery consid-

ered in that case was that of the name of the payee of the check and not that of the drawer or depositor, which presents a very different case from the one at bar. The court there held that the passbook, canceled check, and certificate of deposit, delivered by the bank to the depositor, constituted written evidence of the debt; therefore the six-year statute of limitation applied, and not the three-year statute of limitation. It was further held that no estoppel of the depositor could be invoked against him by the bank which had paid his genuine check to the wrong person, unless the depositor by act or representation induced the bank to pay the wrong person; and that the depositor had a right to assume that the bank would not pay money on his order except upon the genuine indorsement of the payee. The bank had as good an opportunity to discover the forgery as did the depositor; both being equally ignorant of the fact. The depositor performed no act and made no representation to cause the bank to alter its situation. 2 Morse on Banks and Banking (4 Ed.), 846, was cited as supporting this court's position.

Judge Anderson, as the organ of the court in Masonic Benefit Association Case, cited 2 Morse on Banks and Banking (4 Ed.), p. 846, and quoted therefore, all of which was applicable to the case then being decided, except the last two sentences thereof, which we again quote: *"The person whose name is forged is not obliged to examine immediately to detect the forgery. It is sufficient if he notifies the bank when he discovers the forgery."* Supporting the excerpt, in the footnote, is cited the case of First National Bank v. Tappan, 6 Kan. 456, 7 Am. Rep. 568.

All of the precedent quotation sustains and is authority for the conclusion reached by this court in that case, and that part of the quotation is sustained by authorities which the author sets out in the footnote. The next clause of the text delineates the duty of the drawer of

the check, and the last clause thereof, the author's view as to the depositor's duty when the payee's indorsement is forged, thus: "A customer and depositor of a bank is not presumed to know the signature of his payee, and if it does not appear, that he did in fact know the signature, he is not guilty of negligence in not discovering the forgery."

It is, we think, thus made clear that Judge Anderson and this court, in the case of Masonic Benefit Association v. First State Bank, supra, did not have under consideration the case of the duty or negligence of the depositor whose own name had been forged and the canceled checks returned to him with a statement of his account with the bank. But if we are mistaken in our view of what our court had in mind in the Masonic Benefit Association Case, supra, then, in that event, we are not bound by it, as the point was not before the court. The quoted italicized part is not binding upon us, even though it is a view supported by the Tappan Case, supra, and other decisions. It is dicta which is thus defined by this court: " 'Dicta are opinions of a judge which do not embody the resolution or determination of the court, and, made without argument or full consideration of the point, are not the professed deliberate determinations of the judge himself; obiter dicta are opinions uttered by the way, not upon the point or question pending, as if turning aside for the time from the main topic of the case to collateral subjects.' Black's Law of Judicial Precedents, p. 167." State v. Tingle, 103 Miss. 672, 60 So. 728, 729.

We are therefore of the opinion that the Masonic Benefit Association Case, supra, is not decisive of nor precedent for, the case at bar. It then becomes necessary for us to announce the rule which shall be followed in this case, first disposing of one preliminary question.

Skrmetta testified in effect that the forgery was easily and readily detected. Tonsmeire, an official and manager

of the bank, testified that the forgery was so clever he could not detect it and would have paid the money on the forged check, and that he did not believe Skrmetta. It is not shown that Tonsmeire paid any of these checks, nor is there any evidence as to how the checks were handled, or that any diligence was exercised by the employees of the bank. Therefore, it was a question of fact for the jury as to whether or not the bank was negligent in paying forged checks. If the jury so found, then the defense of want of diligence on the part of the depositor would be foreclosed, and under the prevailing rule, undoubtedly correct, the bank would be liable and should suffer the loss.

The bank paid the money on a forged indorsement of the payee as well as the forged indorsement of the drawer of the check. The payees in a number of instances were people receiving valid, genuine checks which were paid by the bank along with the forged indorsements of these same payees on forged checks. The bank paid the money on forged, as well as on genuine, checks; some with forged indorsements thereon, and some with valid. This would indicate that the bank paid no attention to the performance of its duty in seeing that the checks were indorsed by the payees before paying the money. The bank makes no explanation of this; neither does it explain the fact that many of these checks were indorsed by Anderson, the unfaithful bookkeeper who forged them. The bank did not regard Anderson as a proper bookkeeper for Skrmetta. All this evidence and the other circumstances tend to show, or at least the jury would be authorized to find, that the bank's continued payment of the checks and the consequent loss was occasioned by its own negligence. At least the negligence of the bank in the first instance is a question for the jury.

In 1762, Lord Mansfield, in Price v. Neal, 3 Burr, 1354, laid down this rigid rule in this behalf: "If a bank pay the money of its depositor on a forged check no matter

under what circumstances of caution or however honest in the belief of its genuineness, if the depositor himself be free of blame and has done nothing to mislead the bank, all the loss must be borne by the bank." The language of Lord Mansfield, that if the depositor has done nothing to mislead the bank, seems to imply some act or omission prior to the actual payment of the check, and does not refer to the negligence of a depositor in failing to check his bank statement and returned checks. But the English courts have not adhered to the strict rule which we have set forth.

In the discussion of the question, let it be borne in mind that there is no substantial, debatable difference between a passbook, and a statement of an account furnished by the bank. They are both in writing, issued from and by the bank.

There are six views in this country on this question which we shall set forth in abridged form as a matter of economy of space:

(1) The depositor whose name is forged is not obliged to examine his statement and returned checks immediately to detect a forgery. It is sufficient that he notifies the bank when he discovers the forgery. See First National Bank v. Tappan, 6 Kan. 456, 7 Am. Rep. 568, and authorities there cited.

(2) While the depositor is not chargeable in the first instance with the dishonest employee's knowledge of his own forgery or fraud, yet by intrusting to such dishonest agent the verification of his account with the bank, he, the depositor, becomes chargeable with the dishonest employee's knowledge, and if the bank is free from negligence, and is prejudiced, by depositor's failure or negligence, he cannot recover. See First National Bank v. Richmond Electric Co., 106 Va. 347, 56 S. E. 152, 7 L. R. A. (N. S.) 744, 117 Am. St. Rep. 1014; First National Bank v. Allen, 100 Ala. 476, 14 So. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80; Leather Mfrs. Nat. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811.

(3) The effect of intrusting the verification of the bank account to the dishonest employee is the same as if no verification had been made, and the depositor in that case is negligent. August v. Fourth National Bank, 48 Hun, 620, 1 N. Y. S. 139.

(4) The duty resting upon the depositor to verify his bank statement is not a personal duty, but may be delegated to a competent employee, and the fraud or negligence of such employee is not imputable to a depositor; and the latter is exonerated if he believed or had good reason to believe that the employee was honest and competent. This rule is simply to protect a depositor even though an honest, competent person would have discovered the fraud. Kenneth Investment Co. v. National Bank, etc., 103 Mo. App. 613, 77 S. W. 1002; Frank v. Chemical National Bank, 84 N. Y. 209, 38 Am. Rep. 501.

(5) The depositor who intrusts the verification of his bank account and accompanying vouchers and checks to the dishonest employee, if in no worse, is at least in no better position than if he had intrusted the said matter to an honest, competent person. The negligence or omission of such employee is imputable to the depositor, and the question turns upon whether the honest employee would have discovered the forgery. Dana v. National Bank, 132 Mass. 156.

(6) It is for the jury to determine whether or not a reasonable supervision by the employer depositor over the dishonest employee in making the examination of the bank account and accompanying checks or vouchers would have disclosed the forgery. Hardy v. Chesapeake Bank, 51 Md. 562, 34 Am. Rep. 325.

The defense of the bank in this case may be summed up in this statement: It had rendered monthly statements on each succeeding month after the forgery had begun, and had returned these forged checks to the depositor; the checks had been paid by it, and, in consequence of the depositor failing to exercise the reason-

able care of a prudent business man in checking up his bank statement, in a reasonable time, with the stub of his check book, the forgeries were allowed to continue over a long period of time; if the depositor had complied with his duty in making such examination of his stub book, statement, and returned checks, he would have discovered the forgery, and, having so discovered it, would have been bound to notify the bank thereof; in that event the bank would not have paid the subsequent checks. There is no evidence in this record that Skrmetta was guilty of any act which was conducive to the bank's payment of the forged checks; there was no act of estoppel or ratification at or before the time of the issuance of the checks. The whole defense of the bank rests, as we see it, upon the alleged negligence of the depositor in not investigating his own account with the bank in a reasonable time.

It is the duty of a depositor in a bank, on discovering that the bank has paid, and charged his account with, either a check bearing his forged signature as drawer thereof or the forged indorsement of the name of the payee therein, to promptly notify the bank of the forgery. See Michie on Banks and Banking, vol. 5, p. 541. There is no proof in this case that Anderson, the forger, is coercible at law. In fact the record shows that at the time of the first trial he was in the penitentiary, and presumably he is still there. No effort was made on the part of the bank to show that it was damaged in so far as it was prevented from enforcing its claim against Anderson. A depositor's failure to examine his checks within a reasonable time, according to the circumstances of his particular business, and the loss occasioned to the bank by such failure, makes the depositor liable for the amount of the checks or forgeries paid by the bank, where it is shown that the bank was not negligent in the payment of the checks, and was proximately damaged thereby. A depositor owes the bank the duty of

reasonable care in verifying his vouchers and returned checks furnished him by the bank within a reasonable time. If, by such examination, a reasonably prudent business man ought to have discovered the forgery and have reported same to the bank, then, in that event, his negligence constitutes a defense for the bank. However, if he examines the checks himself and the forgery is so skillful that he does not discover the fraud, his failure so to do will not shift on him the loss which was the bank's loss in the first instance. A depositor may intrust this duty to a competent, honest bookkeeper, or to an employee whom he, in good faith, believes to be honest and competent. There are authorities which hold that the action and knowledge of a dishonest employee is at once imputed to his principal. This view, in our judgment, is at war with the general rule and would operate to relieve the bank of any responsibility, and discharge it from the rigor of the rule that a bank pays out the money of its depositors on forged instruments at its peril. We cannot subscribe to this doctrine; it destroys the rule which is wholesome. It has been thought that a bank engaging in the business of depositing and paying out money on checks and other exchange is equipped to discover forgeries and to safely preserve its depositors' money. The bank holds out to the public that its officers and agents are skilled in all matters connected with, and relating to, its ability to detect and prevent forgery.

We conclude that when a bank is free from negligence in the first instance, it becomes and is the duty of the depositor within a reasonable time to make an examination of his statement of account and canceled checks and vouchers supporting same, or, in good faith, to have said examination made by a competent and honest employee, whom he believes to be such. He is chargeable with such information of a forgery or forgeries as a competent, honest employee or agent would discover. If, within a reasonable time, no such examination is made,

the bank is entitled to defend a suit for the amount of the forged checks subsequently paid out by it, and for such loss as was occasioned to it thereby, which was proximately caused by such negligence of the depositor. The question is peculiarly one for a jury.

In announcing this rule of law, we are not unmindful of the fact that many people who are depositors in banks rely entirely upon the bank, and trust implicitly the bank's bookkeeping with reference to their deposits; therefore the rule must be flexible and applied to the circumstances of the particular case. In the case at bar, the court, in the last trial, instructed the jury that October 15th was a reasonable time for such examination to be made by the depositor. We approve this as fair under the facts of this case. The forgery began in August; Skrmetta's statements charging him with the forged checks, together with the checks, were furnished him the first of September and October. He had a bookkeeper, whom he believed to be honest and competent, and he relied upon that bookkeeper to verify his bank statements, and he made only a casual examination of his checks. His bookkeeper was dishonest, but his dishonesty should not be imputed to the depositor in order to permit the bank to relieve itself of its duty to know that it was paying out money to be charged to Skrmetta on forged checks, if Skrmetta, in good faith, believed him to be honest and competent. In the case at bar the question of the bank's negligence vel non should be submitted to the jury, and the right of the bank to avail itself of the defense of negligence on the part of the depositor should only be accorded in the event the jury should find as a fact that the bank was not negligent.

Skrmetta complains because the court declined to allow him to recover for items which he said the bank had charged to him, and which did not appear upon his stub book. The checks were returned to him, but were not to be found when he discovered the forgeries. His only

statement to support the charge of forgery as to these checks, which were not produced and offered in evidence, is that they did not appear on his stub book. He admits that he sometimes cashed checks personally at the bank. He sought to recover on the theory of forgery. The proof as to these checks, offered in both of the trials, did not sufficiently maintain the charge, and the court properly disallowed them by instruction to the jury. The recovery must be upon debt, and the state of the account between the bank and Skrmetta as to the debt must be established by the evidence.

There are other exceptions and objections, and the instructions in full are reviewed in the briefs of counsel for both appellant and appellee; but we think it would be profitless, in view of the conclusions we have here set forth, to take these matters up in detail, as the case will be tried again, and most likely they will disappear on another trial.

Reversed and remanded.