SCANLON–GIPSON LUMBER COMPANY v. GERMANIA BANK.[1]

November 20, 1903.

Nos. 13,528—(13).

**Bank—Pass Book.**

It is within common knowledge that the object of a bank pass, or deposit, book is to inform the depositor from time to time what the condition of his account is as appears upon the books of the bank. When such a book is sent to the bank to be written up and returned with cancelled vouchers, it is, in effect, a demand on the part of the depositor to know what the bank claims to be a statement of his account, and a return of the book with the vouchers is an answer to that demand.

**Evidence.**

*Held,* that the testimony was sufficient in this case to warrant the jury in finding that the defendant bank had properly accounted to plaintiff for the amount of certain checks which had been collected by it through a clearing house, which amount undoubtedly had been received in cash from

[1] Reported in 97 N. W. 380.

the bank by an employee of the plaintiff, who assumed to have authority to receive the money.

**Same.**

*Held,* further, that the testimony in other respects was sufficient to sustain a verdict in favor of defendant.

**Same.**

*Held,* further, that on the testimony the case is one in which the doctrine is strictly applicable that, where a loss must be borne by one or the other of two parties, it should fall on the one through whose fault or negligence the loss occurred.

Action in the district court for Hennepin county to recover from defendant $4,050, money had and received to plaintiff's use. The case was tried before Simpson, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Ripley & Lum,* for appellant.

The burden of proof is upon the respondent to account for the $4,050 in dispute. If defendant has shown what became of the proceeds of any or all of the checks in question in this case, it is by a payment of the whole or a part of such proceeds to James Cross, and such payment was wholly unauthorized and without justification. In other words, the respondent bank, before availing itself of apparent authority to pay out these moneys to a clerk of appellant, must show a series of payments of a similar character prior to the payments in question in this case which had been paid to the same person by the express or implied authority of the appellant. In this connection there is a clear distinction between the appellant's manner of conducting its business in its own office and the conduct of its business with respondent. 1 Am. & Eng. Enc. (2d Ed.) 965; Jackson v. Mutual Ben. Life Ins. Co., 79 Minn. 43, 50; Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224.

There is no authority for holding that such negligence as arises from the fact that appellant may not have used ordinary care to discover and prevent the defalcations can work an estoppel. People v. Bank, 75 N. Y. 547.

Respondent was negligent in its conduct, and therefore any negligence of appellant is immaterial and not to be considered in this action. Appellant, by reason of respondent's negligence, is relieved from the consequences of its own negligence, if any. Critten v. Chemical, 171 N. Y. 219; Leather Mnfg. Bank v. Morgan, 117 U. S. 96, 112; Myers v. Southwestern, 193 Pa. St. 1; Manufacturers v. Barnes, 65 Ill. 69; People v. Bank, supra; Frank v. Chemical, 84 N. Y. 209; Weisser v. Denison, 10 N. Y. 68.

*Chas. G. Laybourn,* for respondent.

When the Scanlon-Gipson Lumber Company intrusted Cross with checks on which to procure and return to them the cash, and permitted him to have entire charge of the accounts and transactions of the corporation with the defendant bank, they held him out to the bank as authorized to transact the business and clothed him with all the powers that were necessary to enable him to carry on that business. They now seek to take advantage of his acts in so far as they are, or were, of benefit and advantage to the Scanlon-Gipson Lumber Company, and repudiate that part of his conduct and those transactions which were unfavorable to themselves. This they cannot be permitted to do. Hall v. Hopper, 64 Neb. 633; Hinman v. Austin (Neb.) 90 N. W. 934.

The acts and conduct of an agent with reference to his principal's business constitute competent evidence to establish by implication authority in such agent to perform acts which may not have been expressly authorized by the principal, and this is so even without regard to the knowledge of the principal as to what in fact the agent is doing or has done. Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224; Best v. Krey, 83 Minn. 32; Manufacturers v. Hazzard, 30 N. Y. 226; Blair v. Wait, 69 N. Y. 113; Miles v. McIlwraith, 8 App. Cas. 120, 133; Cornish v. Abington, 4 H. & N. 549, 556; U. S. Bank v. Bank of Georgia, 10 Wheat. 343; Cooke v. U. S., 91 U. S. 389, 396; Morgan v. Railroad Co., 96 U. S. 716, 720; Ellis v. Ohio, 4 Oh. St. 628.

It was the duty of the Scanlon-Gipson Lumber Company to see to it that its vouchers and passbook comported with their books of account. Critten v. Chemical, 171 N. Y. 219.

The depositor owes the duty (to the bank) of verifying returned checks. Leather Mnfg. Bank v. Morgan, 117 U. S. 96; Dana v. National, 132 Mass. 156; Myers v. Southwestern, 193 Pa. St. 1; Weinstein v. National, 69 Tex. 38; First National v. Allen, 100 Ala. 476.

Where the loss must be borne by one or the other of two parties, it should fall on the one through whose fault or negligence it occurred. Gloucester v. Salem, 17 Mass. 32, 42; Ellis v. Ohio, supra; DeFeriet v. Bank, 23 La. An. 310; First National v. Ricker, 71 Ill. 439; Hardy v. Chesapeake, 51 Md. 562, 590; People v. Bank, 75 N. Y. 547, 562; Crane v. Gruenewald, 120 N. Y. 274; Reinhard, Ag., § 324; Story, Ag., § 443.

COLLINS, J.[2]

This action was brought by a lumber manufacturing corporation against a bank to recover under a complaint as for money had and received. The answer was, in effect, a general denial, and the verdict was for defendant.

The facts adduced at the trial present the too frequently occurring case of a young man who had entered the service of the plaintiff corporation at Minneapolis as an office boy, had continued in its employ for years, had been advanced in position from time to time, had reached a place of responsibility and trust, and was then detected in criminal appropriations of his employer's moneys, which had continued for more than one year, and had amounted to over $4,000. This corporation had a small branch or plant at Nickerson, Minnesota, and for convenience in transacting the business of that plant opened an account with defendant bank in Minneapolis in May, 1899. This account was maintained, with a large number of transactions, down to March, 1902, and during that period of time Cross, the guilty employee, always appeared at the bank as plaintiff's representative. He was intrusted by its officers with checks upon other banks for deposit in defendant's bank, all payable to its order, and without specific directions on the checks as to depositing; with keeping all accounts between the parties; with the duty of maintaining a sufficient balance in defendant bank at all times; and with the transaction of other business with it for plaintiff. He seems to have been trustworthy, and to have properly per-

[2] START, C. J., absent, sick, took no part.
   . 90 M.—31

formed his duty in all respects up to April 20, 1901. He had deposited the checks to plaintiff's credit, using the customary bank or passbook, which was balanced from time to time, as presented by Cross for that purpose, and had received with the balanced book paid and cancelled checks for return to plaintiff.

April 20, 1901, which was on Saturday, Cross was sent to the bank with plaintiff's check for $500 upon another bank, payable to its order. He reached there after banking hours, stating to the cashier that he wanted to get the check cashed. He was informed that, as the vault was locked, he could not be accommodated, and that possibly he might get the money at a mercantile establishment across the street by presenting the check to a certain named person. The latter telephoned to the bank to inquire if the check was good, and, upon being informed that it was, accepted the same from Cross, and paid him $500 in cash. The check was afterwards deposited with defendant, and it received the amount thereof. Cross immediately returned to the bank, and placed the sum of $400 to the credit of plaintiff. This left $100 in his possession, which plaintiff claims he appropriated to his own use. It contends that the bank was negligent in aiding Cross to collect the cash on this check when it was his duty to have placed the same to plaintiff's credit. At the trial he testified that he was directed by Mr. Gipson, secretary of the corporation, who intrusted the check with him, to obtain $100 for his (Gipson's) use, in cash, and to deposit the balance to plaintiff's credit. Cross also testified that he did this, and that Gipson, instead of himself, received the money. Gipson denied the entire story. And it was shown that the bank's passbook was properly balanced at the bank and cancelled checks returned on May 1, following.

The next appropriation of money was July 11, when Cross was sent to the bank to deposit a check for $300. He made a deposit slip showing that $200 was to be placed to the credit of the plaintiff, and that the balance, $100, was to be paid to him in cash. That Cross received this $100, and appropriated it to his own use, he did not deny. Within twenty days thereafter the book was again properly balanced at the bank, and all paid checks returned to the plaintiff.

Cross's method of taking money after this and down to about March 1, 1902, was to present plaintiff's checks, drawn at his request by one

of its officers, upon other banking houses, payable to defendant bank, and then receive a part or all of the amount in cash. If he received a part, the balance was deposited to the credit of plaintiff, and the deposit slip in every such instance showed the amount deposited, and the amount of cash received by him. If he appropriated the entire amount of the check, there would, of course, be no deposit slip. The only possible way of telling whether a part of any certain check was paid in cash was by an examination of the corresponding deposit slip. The officers of the bank testified that when no deposit slip could be found to correspond with any given check, the full amount thereof had been paid to Cross in cash, and also that there would be no record of such a transaction in the bank, except that the check itself, collected through the Minneapolis clearing house, would be stamped by it as paid, if in fact payment was made, and the stamp would show that the check had been paid to it. From the checks to defendant's order which had been paid to it through the clearing house, and for which part credit or none at all had been given to plaintiff, it appeared that Cross had stolen prior to March 1, 1902, the sum of $3,600.

About the day last mentioned plaintiff made some change in its manner of transacting business with the Nickerson plant, and at this time, and, according to Cross's testimony, to obviate the inconvenience of getting the secretary's signature to checks to be used in the Nickerson business, Mr. Gipson proposed to authorize him in writing to sign the corporate name to such checks, and Cross testified that he was then authorized to make proper arrangements at the bank for having checks cashed drawn by himself. It was undisputed that he saw the cashier, left his own signature card, and handed in a typewritten letter authorizing defendant to pay out money on checks signed by himself for the corporation. Because the letter was wholly typewritten it was not satisfactory to the bank, and a messenger was immediately sent to plaintiff's office with it. He interviewed Mr. Scanlon, who was plaintiff's treasurer, in person, and notified him that the bank would not accept the typewritten signature of any officer of the corporation, but that it would require the written signature of a properly authorized officer to such a letter. Mr. Scanlon admitted that the messenger brought him this typewritten letter, and that he at once advised the latter that the matter should have prompt attention. There was some dispute

whether Scanlon at this time told the messenger that he would not himself authorize Cross to draw for the concern. Scanlon testified that he did make that statement, but the messenger denied it, and further testified that Scanlon stated that a properly signed letter would be furnished the bank at once. The very next day a letter purporting to have been signed for the corporation by Gipson was delivered to the bank by Cross, in which he was authorized to sign checks for it. On the strength of this letter Cross drew two checks aggregating $450, upon other banks with which plaintiff kept accounts, and received the money from defendant. At the trial there was a sharp conflict of testimony as to whether the signature purporting to be that of Gipson was genuine or a forgery. There was testimony, independent of that given by Cross, which would warrant the jury in finding that this signature was genuine, and Cross himself testified that it was. Mr. Gipson denied it, but evidently the jury found against him. The total amount appropriated by Cross was thus made $4,050, and this litigation was to determine whether the plaintiff or the defendant should lose this amount. The case was thoroughly tried by skillful counsel, and submitted to the jury by the court in an exceedingly clear and complete charge.

The points made on appeal may be placed in four groups: (a) Those relating to the appropriation of the $100 April 20, 1901; (b) those pertaining to money taken when part of the amount represented by the check was deposited; (c) those bearing upon the money obtained by Cross when he received cash to the full amount of the check; and (d) those which refer to money obtained on the strength of the letter.

1. We are unable to say, from an examination of the testimony, that it conclusively appeared therefrom that Cross was falsifying when he stated that he was directed by Gipson to obtain $100 in cash on the $500 check, and that he paid over the cash to Gipson, as before stated, keeping no part of it himself. Perhaps he was, but his assertion made a question for the jury as against the denial of Gipson. With this finding undisturbed, it must follow that defendant's negligence, if there was any, in assisting Cross to cash the check, cannot be made the basis of a recovery against it. If Gipson directed Cross to take $100 in cash, and to bring it to the office for his personal use, and Cross obeyed, as

sworn to by him, it is immaterial that defendant was negligent. To hold that it is material would be to permit plaintiff to take advantage of an act of its secretary, and to collect from defendant a sum of money once received by him. Further than this, on the evidence it was a question for the jury to say whether or not Cross had previously been sent to the bank by some of plaintiff's officers, and on more than one occasion, to obtain cash upon checks drawn in precisely the same way. If he had, the bank was not negligent when it cashed another check. And it was shown that the passbook was balanced on May 1 following this transaction; that eleven of the paid checks, including the one for $500, were returned in the usual manner to plaintiff; that this book then showed the actual amount deposited on April 20 to be but $400, and that a casual examination thereof would have disclosed the fact that $100 had disappeared. It is also contended that because Cross wrote a letter to the superintendent at Nickerson, in which he stated that he had deposited the full amount of a check for $500 in the bank on April 20, it is conclusively shown that he was testifying falsely when he claimed that $100 of this amount went to Gipson. This letter tended to impeach Cross as to the $100, but it would be rather remarkable to hold that the defendant could be concluded by any statement, false or untrue, made in a letter from Cross to the superintendent.

2. Referring now to money taken when part of the amount represented by a check was deposited and the balance received in cash, it can be said that this was within the apparent authority conferred upon Cross, if the jury believed him truthful concerning the transaction of April 20. If he was authorized by Gipson to draw out $100 in cash, and to deposit the balance of the $500 check (and the jury found that he was), the bank was justified in thereafter permitting him to draw part of the money represented by checks, for apparently he was clothed with authority to do exactly that thing. The authority would be more clearly apparent when, after the bank had posted and balanced the deposit book, it returned the identical check on which the $100 was drawn. No complaint was made as to any transaction of this character subsequent to the return of the book with the paid and cancelled checks, and the jury was justified in finding that there was culpable neglect, on the part of the plaintiff, and, further, that from its acts

the bank might very readily infer that actual authority had been conferred. It was the duty of the plaintiff within a reasonable time after the balancing of the book and the return of the checks to see that the vouchers and the book comported with its accounts. In other words, the plaintiff owed the duty to the bank of verifying all returned checks, and it could not lull its officers into the belief that Cross's method of doing business was approved by the plaintiff by disregarding a plain duty, and then escape the natural consequences of its neglect. Critten v. Chemical, 171 N. Y. 219, 63 N. E. 696.

"It is within common knowledge that the object of a passbook is to inform the depositor from time to time of the condition of his account as it appears upon the books of the bank. It not only enables him to discover errors to his prejudice, but supplies evidence in his favor in the event of litigation or dispute with the bank. In this way it operates to protect him against the carelessness or fraud of the bank. The sending of his passbook to be written up and returned with the vouchers is therefore, in effect, a demand to know what the bank claims to be the state of his account. And the return of the book with the vouchers is the answer to that demand, and, in effect, imports a request by the bank that the depositor will, in proper time, examine the account so rendered, and either sanction or repudiate it. * * * Other principles come into operation where a party to a stated account, who is under a duty, from the usages of business or otherwise, to examine it within a reasonable time after having an opportunity to do so, and give timely notice of his objections thereto, neglects altogether to make such examination himself, or to have it made, in good faith, by another for him; by reason of which negligence the other party, relying upon the account as having been acquiesced in or approved, had failed to take steps for his protection which he could and would have taken had such notice been given. In other words, parties to a stated account may be estopped by their conduct from questioning its conclusiveness." Leather Mnfg. Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657; Dana v. National, 132 Mass. 156.

We must assume that the plaintiff, a large corporation, with capable and experienced officers, knew of the prevailing custom among banks to balance passbooks of their depositors usually once a month, and to return their checks, in order that errors may be discovered to the de-

positor's prejudice, of which, if there are any, prompt notice should be given. It stands undisputed that Cross was to keep the plaintiff's balance good at the bank, and that when he required money for this purpose he informed the proper officer of the corporation, and was then given a check for the amount he represented to be needed, without any further investigation, either of the accounts kept by himself or of the bankbook, which was usually in plaintiff's office, or of the return vouchers. It was also undisputed that at frequent intervals during the time in which criminal appropriations subsequent to the first were being made the book was taken to the bank by Cross, there balanced, and, with the paid checks, returned to Cross, who, as before stated, was the only person representing plaintiff at the bank. It is also undisputed that at no time during this period did any officer or other person connected with the corporation investigate or pay the slightest attention to his accounts, or even casually inspect the bankbook. It is hardly necessary to say that a very slight examination of either accounts or book would have disclosed the fact that Cross was appropriating to his own use money belonging to the plaintiff. It seems almost incredible that a concern transacting the amount of business that this plaintiff did should have permitted an employee to conduct its financial affairs without the slightest oversight. Its methods were a continual inducement to wrongdoing, and actually invited Cross to the commission of unlawful acts. That he yielded to the temptation and became a criminal is not very surprising.

3. It is contended on the part of plaintiff's counsel that, except so far as defendant bank has credited their client with the various sums collected through the clearing house, it has wholly failed to account for the proceeds of seven of the checks admitted to have been paid, and has failed to show how or for what purpose the proceeds of these checks have been disposed of, or to whom paid. This contention relates, in a general way, to checks no part of which was placed to plaintiff's credit, all the money being appropriated by Cross, undoubtedly. But the officers of the bank testified that, where the full amount of checks presented by Cross was paid to him in cash, and no part thereof deposited in the bank, no account would be kept; the checks would represent and be treated as cash. The substance of this testimony was that in every instance where there were no deposit slips cash was paid

out on the checks to their full amount. Upon this testimony the jury would be warranted in finding, as evidently they did, that the bank had accounted for the money it received upon all checks alleged to have been cashed in full.

4. The validity of the checks, amounting in the aggregate to $450, which were signed by Cross and paid by the defendant upon the strength of the letter of authority, must depend upon the question submitted to the jury as to whether the signature of Gipson to the letter was genuine or a forgery. The jury saw fit to believe the testimony of defendant to the effect that the signature was genuine, and there was testimony sufficient to warrant this finding, aside from that given by Cross; but, if this were not true, there was an abundance of evidence to show that the plaintiff was exceedingly negligent in failing to investigate the condition of things when the typewritten letter was returned to Scanlon. Returning that letter to him for the express purpose of having a written signature furnished as authority for Cross's acts, and Scanlon's failure to take any steps to investigate the condition of affairs, would justify the jury in finding that the bank was not at fault when, upon the strength of a letter apparently written in response to its request, it assumed that the plaintiff had acted, and had furnished the authority. A parallel case upon this point is Myers v. Southwestern, 193 Pa. St. 1, 44 Atl. 280. Upon the receipt of the typewritten letter, with information that it was not satisfactory, the plaintiff owed to defendant the duty of exercising due diligence, and, failing to exercise such diligence, it cannot now be heard to demand that the defendant must correct a mistake, to its injury, from which it might have protected itself but for its own negligence.

In fact, and finally, this case is one in which the doctrine that, where a loss must be borne by one or the other of two parties, it should fall on the one through whose fault or negligence the loss occurred, is strictly applicable.

Order affirmed.