EDWIN P. SHATTUCK, as Receiver of THE NEW YORK
   INVESTMENT AND IMPROVEMENT COMPANY, Appel-
   lant, v. GUARDIAN TRUST COMPANY OF NEW YORK,.
   Respondent.

Bills, notes and checks — banks — pleading — payment of
deposit on forged check — effect of provision of Negotiable
Instruments Law requiring depositor to notify bank, within
one year, that check was forged — such statute need not be
pleaded by either party.

1. The Negotiable Instruments Law (§ 326) provides that "No
bank shall be liable to a depositor for the payment by it of a forged
or raised check, unless within one year after the return to the
depositor of the voucher of such payment such depositor shall
notify the bank that the check so paid was forged or raised." In
an action to recover a deposit paid out on a forged check, *held*,
error to exclude evidence which, if admitted, would have tended
to prove that the bank had notice of the plaintiff's claim, within
the year provided by the statute, that the money deposited with it
had been paid upon forged checks.

2. This is not a statute which can be held to impose upon either
party to an action an invariable rule of pleading, or an inflexible
order and sequence of proof in the course of a trial. It is a general
statute which promulgates rules of substantive law rather than of
pleading or evidence. Such a statute need not be pleaded, and
under it either party may prove any fact which may establish a
cause of action or defense, if the pleadings are such as to permit it
under the general rules.

*Shattuck* v. *Guardian Trust Co.*, 145 App. Div. 734, reversed.

(Argued December 19, 1911; decided January 16, 1912.)

APPEAL from a judgment of the Appellate Division ·of
the Supreme Court in the first judicial department,
entered July 19, 1911, affirming a judgment in favor of
plaintiff for an amount for which offer of judgment had
been made, entered upon a decision of the court at a Trial
Term without a jury.

The nature of the action and the facts, so far as mate-
rial, are stated in the opinion.

*Herbert Barry, Julien T. Davies* and *Charles H. Hotchkiss* for appellant.   The defendant's claim made at the trial that it was relieved of liability by reason of the provisions of section 326 of the Negotiable Instruments Law was one that must be pleaded as an affirmative defense; such defense, not being pleaded, should not have been entertained and made the basis for judgment in favor of the defendant. (*Shipman* v. *Bank*, 126 N. Y. 318; *Colell* v. *D., etc., Co.*, 80 App. Div. 342; *W. Nat. Bank* v. *Bagley*, 134 App. Div. 831; *Missano* v. *Mayor, etc.*, 160 N. Y. 123; *MacMullen* v. *City of Middletown*, 187 N. Y. 37; *People* v. *W. T. & B. Co.*, 47 N. Y. 586; *Wells* v. *Monihan*, 129 N. Y. 161; *Lanx* v. *Gildersleeve*, 23 App. Div. 352; *Baldwin* v. *Doying*, 114 N. Y. 452; *Fischer* v. *Met. L. Ins. Co.*, 167 N. Y. 178; *Parmele Co.* v. *Haas*, 171 N. Y. 579.) The court erred in excluding the evidence as to notice of the forgery given by Mr. Lauterbach to Mr. Barber. (*Clews* v. *R., etc., R. R. Co.*, 49 How. Pr. 117; *Scott* v. *D. S. C. Co.*, 51 App. Div. 321; *Schwarting* v. *V. W. N. Y. Co.*, 69 App. Div. 282; *Winnie* v. *U. C. S. Inst.*, 37 Hun, 349; Mechem on Agency, § 721; *Warrington* v. *U. S.*, 11 Wall. 356; *Chouteau* v. *Allen*, 70 Mo. 290; *Ralphs* v. *Hensler*, 97 Cal. 296.)

*Henry D. Hotchkiss* for respondent.   The judgment should not be reversed for any defect in defendant's answer. (*Conought* v. *Nichols*, 42 N. Y. 83; *Wright* v. *Hooker*, 10 N. Y. 51; *Winter* v. *City of Niagara Falls*, 190 N. Y. 198.) The exclusion of that portion of Mr. Lauterbach's testimony which was not admitted was not error. (*A., etc., R. R. Co.* v. *Benton*, 42 Kans. 698; *F. T. Co.* v. *Baker*, 60 N. J. Eq. 170; *Foote* v. *Cutting*, 195 Mass. 55; *Arrington* v. *Arrington*, 114 N. C. 151; *Hoover* v. *Greenbaum*, 62 Barb. 188; 61 N. Y. 305; *Tucker* v. *Tilton*, 55 N. H. 223; *Thompson* v. *C. P. Ry. Co.*, 78 Atl. Rep. 152; *Woolverton* v. *Fidelity & Cas.*

*Co.,* 190 N. Y. 41; *Butler* v. *M. M. Life Ins. Co.,* 184 N. Y. 337; *Casco Bank* v. *Clark,* 139 N. Y. 307; *Prest., etc.,* v. *Cornen,* 37 N. Y. 320; *Fulton Bank* v. *Sharon Coal Co.,* 4 Paige, 127.)

WERNER, J.   This action was brought to recover from the Guardian Trust Company of New York the amount of a certain deposit made with it in the name of the New York Investment and Improvement Company by the president of the latter. For brevity we shall refer to the corporation represented by the plaintiff as the investment company, and to the defendant as the bank.

The complaint is in the usual form. After setting forth the corporate character of the investment company and the bank, and the appointment and qualification of the plaintiff as receiver of the former, it states that on or about the 16th day of December, 1905, the investment company deposited with the bank the sum of $75,000 which belonged to the investment company, and which the bank received upon the agreement that it would pay the same upon demand to or upon the order of the investment company, with interest at the rate of two and one-half per centum, and that on the 17th day of May, 1907, the plaintiff, as such receiver, duly demanded payment of the said deposit, with interest, and that the bank refused and continues to refuse to pay the same or any part thereof, except the sum of $69.04. These allegations are followed by the formal demand for judgment.

The answer, which pleads several distinct defenses, such as payment, account stated and estoppel, admits that the bank received the deposit mentioned in the complaint; that the plaintiff demanded payment and that the bank refused to pay any part of the deposit except the sum of $69.04, which is a balance of accrued interest due to the plaintiff and which the bank stands ready to pay.

Upon these pleadings the evidence was taken at Trial Term before the court and a jury, but by consent of the

parties the case was submitted to the court for decision without a jury. The material parts of the findings are to the effect that on December 16th, 1905, the investment company, by its president, Charles L. Speir, deposited with the bank the sum of $75,000; that the investment company passed a resolution providing that all checks, drafts or other orders for the payment of money should be signed by the president and countersigned by the treasurer of the investment company; that a copy of this resolution was delivered to the bank at the time of the deposit, together with a card containing the authorized signatures of Speir as president of the investment company, and of Alfred Lauterbach as its treasurer; that the bank thereupon issued to the investment company a pass book in the usual form, in which the former was debited and the latter credited with the sum of $75,000; that the deposit was made and received upon the agreement that the bank would hold the same for the use of the investment company and pay the same to it upon demand or upon its order, with interest at the rate of two and one-half per centum; that on or about December 29th, 1905, the said Speir drew on said account a check for $70,000, in form as prescribed by the resolution of the investment company, but in fact genuine as to Speir's signature and forged as to that of Lauterbach, treasurer of the company, and then known by Speir to be so forged; that thereafter and prior to May 5th, 1906, the said Speir drew another check for $5,000 which was in the form prescribed by the resolution of the investment company and was genuine as to Speir's signature but forged as to the signature of Lauterbach, and that Speir knew that fact; that the bank paid out the money to Speir upon the faith of these two checks without any knowledge or notice of the forgery of Lauterbach's signature; that on May 5th, 1906, Speir requested the bank to balance the pass book, which was done, and that when so balanced it showed the debit of $75,000 with interest amounting to $69.04, less

the two checks, which left a balance of $69.04 due to the investment company; that Speir at that time gave the bank a receipt in the following form:

"Received pass book balanced to May 5th, 1906, and two vouchers as per list. New York Investment and Improvement Company by Charles L. Speir, President. Dated May 5th, 1906;" that this pass book, so balanced, came into the possession of Lauterbach as treasurer of the investment company on or about May 7th, 1906, but without the two vouchers, and that there has been no trace of these vouchers since their delivery to Speir; that neither the investment company nor the plaintiff as its receiver notified the bank of said forgeries within one year after the return of said vouchers.

Upon these findings of fact the trial court based the conclusions of law that the bank returned to the investment company the balanced pass book and the two checks for $70,000 and $5,000 respectively; that on May 5th, 1906, the account between the bank and the investment company was stated and a balance struck fixing the indebtedness of the bank to the investment company at the sum of $69.04; that the plaintiff proved no fraud or mistake for which the account thus stated can be opened, and that the plaintiff is entitled to judgment for the sum of $69.04. It may be stated in passing that, although the complaint demands judgment for the full amount of the deposit, with interest, the plaintiff only seeks to recover the difference between that amount and a certain sum which has been paid to him since the commencement of this action under circumstances which are not germane to the two questions which we deem it necessary to discuss for the purposes of this appeal. Upon that feature of the case it is enough to say that the plaintiff claims to be entitled to recover a sum very largely in excess of the judgment which was rendered. Our examination of the record has convinced us that the judgment rendered by the trial court and affirmed by a divided Appellate Divi-

sion is sustained by findings of fact which are supported by evidence, and unless the trial court committed substantial errors to the prejudice of the appellant the judgment will have to be affirmed here.

The appellant's main contention upon this appeal is that the trial court erred in excluding certain evidence which, if admitted, would have tended to prove that the bank had notice of the plaintiff's claim that the money deposited with the bank had been paid by it upon checks that were forged as to the signature of the treasurer of the investment company, and that this notice was given within the year provided by the statute under which this case must be decided. If this contention is well founded, there can be no escape from a reversal of the judgment, because the whole case depended upon the vital question whether the bank had received notice of the forgery within the time fixed by the statute. This statute, which is a part of the Negotiable Instruments Law (Section 326), provides that "No Bank shall be liable to a depositor for the payment by it of a forged or raised check, unless within one year after the return to the depositor of the voucher of such payment, such depositor shall notify the Bank that the check so paid was forged or raised." The learned trial court found, and for the purposes of this appeal we must assume, that the two checks upon which this deposit was paid out were forgeries in so far as they purported to bear the genuine signatures of Alfred Lauterbach, the treasurer of the investment company. It has also been found that the vouchers, the two checks, were returned to Speir, the president of the investment company, on May 5th, 1906, together with the balanced pass book showing the state of the account, and that Speir, as such president, thereupon signed and delivered to the bank the receipt therefor which is set forth in the findings. This latter finding warranted the legal conclusion that the vouchers had been returned to the investment company. The learned trial court further found that the balanced

pass book came into the possession of Lauterbach, the treasurer of the investment company, on the 7th day of May, 1906, and that on the 17th day of May, 1907, the plaintiff demanded payment of the deposit with interest. There is no finding of any other demand or notice and thus the decision imports that there was no notice or demand until a year and twelve days after the bank had returned to the investment company the vouchers upon which the deposit had been paid out. This finding, which is supported by the testimony received by the trial court, necessarily led to the conclusion that the statute had not been complied with, and that the plaintiff was not entitled to recover more than the small balance of interest which was conceded to be due.

As bearing upon this feature of the case the plaintiff offered in evidence the deposition of Lauterbach, who had died prior to the trial, for the purpose of showing that in the month of May, 1906, he had several interviews with one Barber, who was one of the legal counsel of the bank, one of its directors and a member of its executive com- mittee. That such interviews had in fact taken place was clearly established by so much of Lauterbach's deposition as was permitted to bo read in evidence, and by the admissions of Barber. The latter, although admit- ting that he had talked with Lauterbach about matters in which the bank was interested, claimed that the con- versations had no relation to the transactions involved in this action. This was the situation when the plaintiff offered to read further portions of Lauterbach's deposi- tion for the purpose of showing that in the latter part of May or the early part of June, 1906, he and Barber had two interviews, in which Lauterbach informed Barber that Speir, as president of the investment company, had been a defaulter; that he had committed suicide after taking out two incontestable policies of insurance upon his life for an amount sufficient to cover his defalcations; that he had left a letter for Lauterbach in the nature of

a declaration of trust directing the disposition of the proceeds of the policies; that he showed Barber this letter; that it contained a direction to pay to the bank the sum of $68,067.09 for account of the investment company, and many other details indicating that Barber was very explicitly informed of the conditions surrounding the transaction in suit. Among other things, Lauterbach testified that he told Barber that Speir had forged his name to the checks; that he, Lauterbach, had never signed a check to withdraw this deposit; that he had never seen either of the vouchers; that he told Barber of an interview with Haynes, another officer of the bank; and that he, Lauterbach, suggested to Barber the propriety of having the bank trace these checks so that it could be ascertained just what the situation was. These running excerpts from the deposition of Lauterbach sufficiently indicate the scope and purpose of the testimony which the plaintiff sought to introduce. From Barber's own admissions it is clear that the meetings between him and Lauterbach were not casual or accidental. They met by appointment, and even Barber's own statement, that the interviews were upon another matter in which the bank was interested, would permit the inference that in the conversations he was representing the bank. With that circumstance in the case Lauterbach's version of the interviews was of the utmost importance. If it were taken as true it tended to show (1) that Barber was the representative of the bank; and (2) that he had direct knowledge of facts which it was his duty to communicate to the bank, and which it must be presumed he did so communicate. No two cases involving this question are precisely alike, and none of the authorities cited to us are exactly in point, but we think this testimony, offered by the plaintiff and excluded by the court, strongly tended to bring Barber within the general rule which is fairly stated by Judge GRAY in *Casco Nat. Bank* v. *Clark* (139 N. Y. 307, 313), as

follows: "Where a director or an officer has knowledge of material facts respecting a proposed transaction, which his relations to it, as representing the bank, have given him, then, as it becomes his official duty to communicate that knowledge to the bank, he will be presumed to have done so, and his knowledge will then be imputed to the bank." With the immaterial alteration that the knowledge derived by Barber related to a past or present transaction, the foregoing statement of the general rule is very pointedly applicable to this case. We think it was substantial error, therefore, to exclude the deposition of Lauterbach, and that the judgment must be reversed.

Although this view of the ruling referred to disposes of this appeal, there is one other question which we deem it necessary to discuss for the guidance of counsel upon another trial, and that is whether the statute above quoted is one which affects the general rules of pleading or proof. Although no such question appears to have been raised at the trial, the learned justices of the Appellate Division regarded it as one of first importance upon which they arrived at radically opposing conclusions. Two of the justices thought that, by analogy to the statutes which require pleading and proof of notice of personal injuries in actions against municipal corporations, or under the Employers' Liability Act, the burden was upon the plaintiff to plead the statute and prove compliance with its provisions, as an essential part of his cause of action. They were also of the opinion that if it were necessary for the defendant to plead the statute as a defense, it had been sufficiently pleaded to be available for that purpose. Three of the justices held to the view that the statute is one of defense, like the Statute of Limitations and the Statute of Frauds, which must be pleaded by the defendant; but they differed as to whether the defendant had in fact pleaded it or not. One of the three held that the answer was insufficient in this respect, and the other two concluded that all the facts constitut-

ing the statutory defense were fully set forth. In respect of this last suggestion we have only to say that, if the statute were one which imposes upon all banks sued for the recovery of deposits, the affirmative duty under all circumstances to allege its provisions when relied upon as a defense, we should concur in the view that the defendant bank had sufficiently pleaded the facts which were material to the question whether it was entitled to the protection of the statute or not.

We think this statute is not one which regulates or limits any general rule of pleading or proof. It is a general public statute which need not be specially pleaded. (*Shaw* v. *Tobias,* 3 N. Y. 188.) It is unlike the statutes requiring notice to municipal corporations or employers, of the time, place, nature, etc., of personal injuries as a preliminary to the right to maintain actions for damages. In such cases the right to bring an action depends upon the service of notice, and such service is an essential part of the cause of action which must be both pleaded and proved.

There is also a manifest difference between the statute which we are considering and the Statute of Frauds or the Statute of Limitations. For obvious reasons these latter statutes must be pleaded as defenses. They go to the remedy rather than the right, and if not pleaded are deemed waived. Upon first impression there is an apparent analogy between this section of the Negotiable Instruments Law and a statute of limitations, but it quickly fails in the light of analysis. This law does not limit the time within which a depositor may bring suit against a bank. It simply declares that unless a depositor whose money has been paid out on a forged or raised check, shall within one year after the return to him of the voucher of each payment "notify the bank that the check so paid was forged or raised," the bank shall not be liable. The depositor still has the right to bring suit at any time within the period fixed by any

14

general Statute of Limitations. He may sue on the very day of making his deposit, and yet take a year from the time when his vouchers are returned to him in which to serve the notice required by the statute. If the vouchers are never returned to him the statute has no application, for he is only compelled to serve the notice within one year after the return to him of the voucher of each payment upon which the bank relies. We regard this as one of those general statutes which promulgate rules of substantive law rather than of pleading or evidence. Such a statute need not be pleaded, and under it either party may prove any fact which may establish a cause of action or defense, if the pleadings are such as to permit it under the general rules. We need no better illustration than the case at bar. The plaintiff brought his suit upon a common-law cause of action, and upon a complaint which, according to every rule of Code pleading, would have successfully withstood every attack by demurrer. Under this complaint the plaintiff could have proceeded upon the theory that no question could arise under the statute, because no vouchers had ever been returned to it. Acting upon that assumption, he could have made his proof of forgery, and have left to the defense any further proof, or he could have attempted to show that, although the vouchers were returned to him, he did serve the notice provided for in the statute. As his complaint was good and contained no reference to the statute, the defendant could not be required to plead it. For aught that the defendant might glean from the complaint, the plaintiff's cause of action might be one which was not affected by the statute. It is, in short, one of those numerous cases in which the common law has been modified or changed by statutory enactments which have nothing to do with the rules of pleading, and which are controlled by the usual rules of evidence. There may be cases, of course, in which the circumstances would render it proper to affirmatively allege compliance with the stat-

ute; and there may be others in which the complaint is in such form that the defendant ought to plead plaintiff's non-compliance with the statute as a defense. We can easily imagine a case in which the plaintiff might find it desirable or necessary to prove, in the first instance, that he served the notice required by this statute. It is readily perceivable, however, that in some other case a plaintiff could properly reserve such evidence until confronted with testimony tending to show that the vouchers had been returned to him, and that his case is within the statute. The course pursued upon the trial of this case, under the pleadings as framed, indicates that no set rule of pleading or sequence of proof can be invoked in such cases. The plaintiff proved the deposit, the demand, the bank's refusal to pay, and then rested. The bank then proved payment upon checks which purported to bear the signatures of the duly authorized officers of the investment company, and the return of the vouchers to the investment company. Then the plaintiff returned to the attack and gave evidence tending to show that one of these signatures was a forgery. This was followed by plaintiff's attempt to prove that notice had been given to the bank through Mr. Barber, its representative. These and other kindred questions, which might arise in a variety of ways, indicate that this is not a statute which can be held to impose upon either party to an action an invariable rule of pleading, or an inflexible order and sequence of proof in the course of a trial. These matters are left to the general rules which courts are called upon to apply to the peculiar circumstances of each separate case.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., Gray, Willard Bartlett, Chase and Collin, JJ., concur; Hiscock, J., concurs in result.

Judgment reversed, etc.