## BRUNSWICK CORPORATION v. NORTHWESTERN NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS.[1]

March 5, 1943.

No. 33,203.

*Gillette & Meagher* and *Faegre & Benson,* for appellant.
*Stinchfield, Mackall, Crounse & Moore,* for respondent.

HILTON, JUSTICE.

Plaintiff, a depositor in defendant bank, sued for the amount

[1]Reported in 8 N. W. (2d) 333.

paid by the bank as drawee on five forged checks charged to plaintiff's account. The trial court made findings and conclusions favorable to defendant. Thereafter the court ordered a new trial upon the ground that it had erred "in denying plaintiff's motion for a trial of said action by a jury." Defendant appeals from that order.

Plaintiff owns and operates the Andrews Hotel in Minneapolis. Its board of directors is composed of seven experienced business and professional men. Four of the directors are also officers, two of whom, the president and the treasurer, have active charge of the corporation's affairs. From 1931 until August 1939, plaintiff employed one W. S. Copeland under the title of auditor. Copeland's duties consisted of keeping the books and records of the operations of the hotel, collecting the money as it came in from various sources and depositing it in the bank, drawing checks for the corporation and countersigning them as auditor, collecting the cancelled checks at the end of the month, auditing the accounts, reporting discrepancies, if any, examining the cancelled checks and bank statements, and making out reports for the officers of the corporation.

Plaintiff has carried three checking accounts with defendant for the past several years, designated "corporate," "general," and "payroll." The general and payroll accounts were opened in 1931; the corporate, in January 1932. At the time of opening the corporate account, plaintiff's president wrote a letter to defendant stating: "The same signatures that you have on file for our regular account will govern withdrawals on this account." The signatures referred to were subscribed on a signature card kept by the bank and included those of two employes, the hotel manager and the auditor, who were "not to sign together," and those of six of the directors. The signature card provided that "two of the above authorized signatures are required." Pursuant to this arrangement, plaintiff has drawn checks on its general and payroll accounts since 1931, and on its corporate account since 1932. At the time the corporate account was opened, plaintiff received and has

since had in its possession a deposit book in which items of deposit and withdrawals were entered and credited or debited to plaintiff on the books of defendant. This passbook contains the following provisions:

"Depositor's monthly statement for each calendar month with cancelled checks will be ready for delivery to the depositor on the first business day of the month following the month for which the statement is rendered. It shall be the duty of the depositor to call and receipt for his monthly statement, and cancelled checks, within a reasonable time after said date. If such statement is not called for within thirty days from such date, the Bank may, in its discretion, mail such statement to the depositor's address, as the same appears on the signature card of the depositor on file with the Bank. It shall be the duty of the depositor to carefully examine his monthly statement and cancelled checks and report to the Bank, within ten days after the receipt of same, or within fifteen days from the date of mailing, any errors or discrepancies therein, and if no report is made within such time the depositor agrees to accept the stated balance as correct and to assume responsibility for and hold the Bank harmless by reason of its payment of any item reported in said account, and to release the Bank from all liability therefor."

Practically all contact between plaintiff and defendant from 1931 until August 1939 was carried on by plaintiff's employe Copeland. He made the deposits and collected the statements each month, signing receipts therefor each time. He had authority to draw and sign checks, but all checks had to be signed also by an officer of plaintiff.

In 1937 Copeland was engaged by Frank Dickerson, manager of the Andrews Hotel Coffee Shop, to do his bookkeeping and auditing. Dickerson authorized Copeland to make deposits to his personal account and provided him with a rubber stamp to endorse checks payable to him, Dickerson. Dickerson is the sole owner and operator of the coffee shop. He leases his location from plaintiff.

On the following named dates checks in the following amounts were drawn on plaintiff's "corporate account" by Copeland as "auditor" in the name of plaintiff, without any authority from plaintiff, namely, July 20, 1938, $1,500; November 15, 1938, $1,500; December 30, 1938, $1,500; April 29, 1939, $1,500; May 31, 1939, $1,326.10. Each check was made payable to "Frank Dickerson, Andrews Hotel Coffee Shop," and each bore on its face a counter-signature in the name of "B. H. Stahr," who was then president and a director of plaintiff. Each check was endorsed: "Frank Dickerson, Andrews Hotel Coffee Shop," placed thereon by Copeland with a rubber stamp. Each purported signature of B. H. Stahr was in fact a forgery made by Copeland. The amount of each of these checks was credited to the account of Dickerson and charged against plaintiff's corporate account. Copeland was apparently trying to cover up prior thefts from Dickerson's account.

With the monthly statements returned by defendant to plaintiff for the months of July, November, and December 1938, and April and May 1939, on or about the first day of each month following, checks which had been drawn on plaintiff's account and cashed by defendant during each of said months were returned to plaintiff. The statements and cancelled checks were collected by Copeland for and on behalf of plaintiff. Copeland reported no discrepancies to his superiors, and no officer of plaintiff discovered the forgeries until August 1, 1939. Plaintiff did not report or give any notice to defendant that the statements contained any errors or discrepancies until August 16, 1939, at which time it demanded that the amount of the five forged checks be credited to plaintiff's corporate account. Defendant denied liability, and this suit followed.

Plaintiff claims that defendant wrongfully debited its corporate account; that defendant was absolutely bound to detect the forgery and, in failing to do so, must stand the loss occasioned thereby; and, further, that in failing to detect the forgery, defendant was negligent.

Defendant asserts (1) that the provision in the passbook requiring the depositor to check for errors and report them within

ten days after receiving statements is a controlling feature of the deposit contract, and that plaintiff's failure to comply with the provision precludes its right to question defendant's wrongful payment of the forged checks; and (2) that Minn. St. 1941, § 48.29 (Mason St. 1927, §§ 7698, 7699), required plaintiff to report the forgeries within six months, and that as to the first three checks here involved more than six months had elapsed before plaintiff called attention to the forgery, so that action on them is barred. Defendant further contends that the construction of the written contract, contained in the passbook, and the construction and application of the statute involved are questions peculiarly within the province of the court and that therefore the trial court erred in granting a new trial on the ground that the case should have been submitted to a jury.

There is no dispute about the material facts in the case nor as to some of the principles of law. Defendant concedes that it owed plaintiff as a depositor the absolute duty to pay out its money only according to plaintiff's order. That is the law. Rodgers v. Bankers Nat. Bank, 179 Minn. 197, 229 N. W. 90; Germania Bank v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 A. S. R. 519; Wussow v. Badger State Bank, 204 Wis. 467, 234 N. W. 720, 236 N. W. 687; First Nat. Bank v. Patty (Tex. Civ. App.) 62 S. W. (2d) 629; 7 Am. Jur., Banks, p. 286, § 405; *Id.* p. 427, § 590; 9 C. J. S., Banks and Banking, p. 673, § 330. The relation between a bank and its depositor is that of debtor and creditor. 1 Dunnell, Dig. & Supp. § 780. Liability accrued at the time of the payment of plaintiff's money upon the forged checks; and, unless relieved in whole or in part by one or both of the defenses asserted, defendant must stand the loss.

■ One of these defenses is plaintiff's admitted failure to comply with the passbook provision requiring plaintiff to give notice to the bank of any errors, by reason of which defendant claims plaintiff's right to recover is barred. The "object of a passbook is to inform the depositor from time to time of the condition of his account as it appears upon the books of the bank." Scanlon-

Gipson Lbr. Co. v. Germania Bank, 90 Minn. 478, 486, 97 N. W. 380, 382. Absent an agreement providing the time within which a passbook, together with cancelled checks and bank statements, should be examined by the depositor, the rule is that such examination must be made within a reasonable time. Scanlon-Gipson Lbr. Co. v. Germania Bank, *supra;* First Nat. Bank v. Richmond Elec. Co. 106 Va. 347, 56 S. E. 152, 7 L.R.A.(N.S.) 744, 117 A. S. R. 1014; Leather Mfrs. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. ed. 811; Dana v. National Bank of the Republic, 132 Mass. 156.

In the instant case the passbook provision limited the time within which to examine and give notice of errors to ten days after receiving the monthly statements. Such a limitation is reasonable under the circumstances here established, and upon the authority of Semingson v. Stock Yards Nat. Bank, 162 Minn. 424, 203 N. W. 412, it constitutes a contractual obligation binding upon the depositor, whether the depositor signed it or was aware of its contents or not. We are not unmindful of the authorities to the contrary which deem such provisions to be "traps for the unwary." Los Angeles Inv. Co. v. Home Sav. Bank, 180 Cal. 601, 613, 182 P. 293, 298, 5 A. L. R. 1193, 1201; Wussow v. Badger State Bank, 204 Wis. 467, 472, 234 N. W. 720, 236 N. W. 687. This court is, however, committed to the view that reasonable provisions in a passbook are binding upon the depositor. Semingson v. Stock Yards Nat. Bank, *supra.* We believe that the weight of reason and authority supports our view. Annotation, 5 A. L. R. 1203; 9 Minn. L. Rev. 672. In order that such passbook provisions have the force and effect of contract, it is necessary only that enforcement of them as such be reasonable under the circumstances. In the instant case, plaintiff's employe customarily went to the bank the first of each month and received the bank statements and cancelled checks. He was charged with the duty of checking them over and discovering whether the bank's statements were correct. He made out daily reports and monthly reports which he turned over to plaintiff's active officers. There is no contention that he

did not have ample time and abundant opportunity to check for and discover errors within the ten-day period provided. That he performed his duties in fraud of plaintiff does not excuse plaintiff of its duty to examine the statements and to notify the bank of discrepancies. First Nat. Bank v. Farrell (3 Cir.) 272 F. 371; C. E. Erickson Co. v. Iowa Nat. Bank, 211 Iowa 495, 230 N. W. 342; Critten v. Chemical Nat. Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529; Leather Mfrs. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. ed. 811; Dana v. National Bank of the Republic, 132 Mass. 156; First Nat. Bank v. Richmond Elec. Co. 106 Va. 347, 56 S. E. 152, 7 L.R.A.(N.S.) 744, 117 A. S. R. 1014; Myers v. S. W. Nat. Bank, 193 Pa. 1, 44 A. 280, 74 A. S. R. 672.

■ If not impliedly repealed, Minn. St. 1941, § 48.29 (Mason St. 1927, §§ 7698, 7699), bars plaintiff's action on the first three checks here involved. That section provides:

"No bank which has paid and charged to the account of a depositor any money on a forged or raised check issued in the name of the depositor shall be liable to the depositor for the amount paid thereon, unless either (1) within six months after notice to the depositor that the vouchers representing payments charged to the account of the depositor for the period during which the payment was made are ready for delivery, or (2) in case no such notice has been given, within six months after the return to the depositor of the voucher representing the payment, the depositor shall notify the bank that the check so paid is forged or raised. This notice may be given by mail to the depositor at his last known address, with postage prepaid."

Plaintiff contends the quoted section was repealed by the uniform negotiable instruments act. Minn. St. 1941, § 335.01, *et seq.* (Mason St. 1927, §§ 7235, 7044, *et seq.*). Although the negotiable instruments act is a complete body of law on the subject of negotiable instruments, it does not contain a statute of limitations. It cannot be said that it was intended that the negotiable instruments act repealed this then existing limitation statute. Plaintiff

argues that this section is not a limitation statute; that it is in effect a provision of law similar to the statute voiding liability on instruments obtained by fraud, Minn. St. 1941, § 334.12 (Mason St. 1927, § 7247); and that, since the negotiable instruments act expressly saved the latter section, the legislature must have intended to repeal the six-month statute relating to forgeries. However, in view of the fact that the fraud statute provides no time limitation whatever, plaintiff's analogy seems untenable. It might be noted in passing that the negotiable instruments act as it was enacted in New York, from which our own act was drawn, included a provision requiring depositors' suits against banks for forgery to be brought within one year. See Shattuck v. Guardian Trust Co. 204 N. Y. 200, 97 N. E. 517. That our legislature did not see fit to embody the one-year limitation is persuasive that it did intend to retain the then existing six-month limitation statute. We so construe the legislation. For construction of similar limitation statutes, see Union Tool Co. v. Farmers & M. Nat. Bank, 192 Cal. 40, 218 P. 424, 28 A. L. R. 1417; Glassell Development Co. v. Citizens Nat. Bank, 191 Cal. 375, 216 P. 1012, 28 A. L. R. 1427.

■ We are next confronted with the question whether negligence on the part of defendant, if any, has the effect of exonerating plaintiff from its failure to inspect the bank statements and to notify defendant of the forgeries within the ten-day limitation provided in the passbook. The rule is well established that, in the absence of an agreed time limitation, a depositor must check his cancelled checks and bank statements and report errors within a reasonable time after receiving them. Annotations, 15 A. L. R. 159, and 28 A. L. R. 1435; Leather Mfrs. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. ed. 811; Scanlon-Gipson Lbr. Co. v. Germania Bank, 90 Minn. 478, 97 N. W. 380. There is abundant authority that if the bank was negligent in failing to discover the fraud or forgery the depositor may recover regardless of whether he examined his statements and cancelled checks or not. Glassell Development Co. v. Citizens Nat. Bank, 191 Cal. 375, 216 P. 1012,

28 A. L. R. 1427; Leather Mfrs. Bank v. Morgan, *supra;* 3 R. C. L. pp. 537, 538, §§ 167, 168; 7 Am. Jur., Banks, p. 371, § 516; First Nat. Bank v. Patty (Tex. Civ. App.) 62 S. W. (2d) 629.

Most of the cases so holding do not involve contract limitations. Some of them too go on the theory that such passbook provisions are not contractually binding. The California and Wisconsin cases, heretofore cited, come within this group. As previously pointed out in this opinion, this court deems such provisions contractually binding. If the contract provision limits absolute liability in the first instance, we see no reason for holding that it does not limit liability for negligence. Contractual limitations and regulations of liability for negligence are valid and binding. Alair v. N. P. R. Co. 53 Minn. 160, 54 N. W. 1072, 19 L. R. A. 764, 39 A. S. R. 588; Porteous v. Adams Exp. Co. 112 Minn. 31, 127 N. W. 429. As indicated by Mr. Justice Cardozo in Murray v. Cunard S. S. Co. 235 N. Y. 162, 139 N. E. 226, 26 A. L. R. 1371, the limiting of time in which a notice must be given is a regulation, rather than an exoneration.

It follows that there were no issues for trial and that the trial court correctly directed judgment for defendant in the first instance.

The order appealed from is reversed.