McCurn, J.
The plaintiff.Maryland Casualty Company was the surety upon the official bond of the trustee in bankruptcy of the estate of the Van Veehten Milling Company, Inc., bankrupt. The trustee forged the countersignature of the referee in bankruptcy to eight different checks totaling $4,420.06. The defendant Central Trust Company, depository of the funds of the bankrupt estate, paid the forged checks and the plaintiff, as surety for the trustee who did the forging, made good the amount of these checks to the bankrupt estate. The plaintiff, being subrogated to any rights which the bankrupt estate might have against the bank for paying the forged checks, brings these actions to recover the sums which it has paid out.
The first action seeks recovery on the theory of conversion on breach of trust and the relator action seeks recovery under a depository bond given by the defendant bank for the faithful performance of its duties. The actions were consolidated and trial was by the court without a jury. Five defenses were set up by the bank in each action: the statutory protection given by section 326 of the Negotiable Instruments Law, negligence of the depositor in not examining returned vouchers, estoppel by carelessness, account stated and negligence of the referee. *654 All these defenses were held available to the bank, as to each action, in a former decision by this court (Maryland Casualty Co. v. Central Trust Co., 265 App. Div. 416). The trial court has directed judgment for the plaintiff.
The. defendant bank was a designated depository for the funds of bankrupt estates and had accordingly been apprised that, under the terms of General Order 29 of the United States Supreme Court General Orders in Bankruptcy, no moneys could be withdrawn unless by check signed by the trustee and countersigned by the referee in bankruptcy. It has previously been held that where such a depository has notice, actual or constructive, that funds on deposit are bankruptcy funds, to be drawn out only on checks signed by the trustee and countersigned by the referee, it would be liable if the funds are paid out on checks not bearing the countersignature (Fidelity S Deposit Co. v. Queens Co. Trust Co., 226 N. Y. 225; American N. Bank v. Fidelity & Deposit Co., 129 Ga. 126). The fact that the countersignature is forged should not affect the basis of liability (Negotiable Instruments Law, § 42). The liability in the present case may be overcome only if one or more of the defenses has been established.
The first defense is that of the statutory protection given by section 326 of the Negotiable Instruments Law. That section reads: “No bank shall be liable to a depositor for the payment by it of a forged or raised check, unless within one year after the return to the depositor of the voucher of such payment, such depostior shall notify the bank that the check so paid was forged or raised.” It appears from the evidence that the referee instructed this depository, among others, to return can-celled checks and accompanying vouchers to his office, not to the trustee. The vouchers in this account were returned twice: once, when the clerk of the Bankruptcy Court called for them at the bank on September 16, 1938, and, two years later, when the referee called for them at the bank on September 26, 1940. After the referee studied the vouchers picked up in 1940, he notified the bank, for the first time, that the trustee had wrongfully drawn the eight checks against the account. The first four checks drawn between May 24, 1938, and August 11, 1938, were covered in the vouchers picked up by the clerk in that year. The last four checks, drawn between October 18, 1938, and August 7, 1939, were covered in the vouchers picked up by the referee in 1940.
The trial court came to the conclusion that the trustee was the “ depositor ” within the meaning of section 326 of the *655 Negotiable Instruments Law and that the bank had therefore lost its statutory protection by returning the vouchers to the referee, who could not be considered the trustee’s agent. The appellant urges that the real depositor was the referee or the District Court, or both the referee and the trustee, and that, in any event, there was a sufficient return of the vouchers to the trustee when they were placed in the files of the Bankruptcy Court. We believe that there are more cogent reasons for reversing the decision of the trial court.
By section 61 of the Bankruptcy Act (U. S. Code, tit. 11, § 101) it is provided that the judges of the courts in bankruptcy shall designate banking institutions as depositories “ for the money of estates under this Act When such money is deposited in a designated bank it is like any other deposit, becoming the property of the bank and leaving the bank a debtor for the amount (Gardner v. Chicago Title & Trust Co., 261 U. S. 453). Such a deposit does not create a debt to the United States but creates a debt owing by the depository bank to the representatives of the bankrupt estate. The money deposited, less expenses of administration, belongs to the creditors of that estate to whom it must ultimately be distributed (Florida Bank & Trust Co. v. Union Indemnity Co., 55 F. 2d 640).
Since section 326 of the Negotiable Instruments Law refers to the bank’s liability “ to a depositor ” it means a liability to the owners of the funds deposited, not a liability to a depositing representative. A corporation would be the owner, and hence depositor, of corporate funds deposited to its credit by one of its officers. (Cf. Shattuck v. Guardian Trust .Co., 145 App. Div. 734, revd. on other grounds, 204 N. Y. 200.) If it be true that the deposits are owned ultimately by the creditors of the estate, then they are the actual depositors within the meaning of this section, even though the trustee may have legal title by operation of law for purposes of administering the estate. A parallel result has been reached by the Supreme Court of Ohio in construing township deposits within the meaning of a similar section (American Surety Co. of N. Y. v. Cortland Savings & Banking Co., 143 Ohio St. 353). To be exact, we regard the depositor in this case as being the estate of the bankrupt. This is in accord with the definition of the depository previously cited from the Bankruptcy Law. It is in accord with the title of the deposit, as listed on the bank records: “ U. S. District Court, Western Dist. of New York, in the matter of Van Vechten Milling Co., Inc., Bankrupt. Herbert T. Haidt, Trustee ”.
As a depositor, of course, the estate of the bankrupt must work through the representatives of the Bankruptcy Court. *656 A return of the vouchers to any officer of that court, whether he be the referee or the trustee, should make no difference in the application of the section. This is particularly true where the depository follows the instructions of the court. To hold otherwise is to deny the statutory protection to the bank because it returned the vouchers to the referee who supervised the acts of the trustee and whose signatures were forged, rather than to the trustee who forged them. It would penalize the bank for obeying an instruction of the referee and yet would hold it defenseless in an action on the bond under the very terms of which it was required to “ obey all the orders of the court.” It is true that the section is in derogation of the common law and should be strictly construed, but we do not believe a strict construction requires us to reach a result so inequitable.
We hold, therefore, that section 326 of the Negotiable Instruments Law is a defense to the causes of action on the first four checks wrongfully drawn by the trustee, since the depositor failed to notify the bank of the forgeries within one year after vouchers of such payments were returned to the depositor. The defense applies in each of the consolidated actions for the reasons stated on the former appeal in this case. The defense does not apply to the last four checks since the vouchers of these payments were not returned until September 26,1940, and the forgeries were shortly thereafter reported to the bank.
We therefore come to the question of whether or not any of the other defenses may apply to the remaining checks. One of those defenses is the alleged negligence of the depositor, a defense passed over among others by the trial court because the trustee was looked upon as the exclusive depositor. Such a defense is available where a depositor fails to do those things dictated by ordinary business customs which, if done, might prevent the wrongdoing which results from their omission; and it is no answer that the execution of those duties is delegated to an employee who turns out to be untrustworthy (Thomson v. N. Y. Trust Co., 293 N. Y. 58; Critten v. Chemical Nat. Bank, 171 N. Y. 219; Screenland Magazine v. National City Bank of N. Y., 181 Misc. 454). In such a case there may be no recovery against the bank unless it has also been negligent.
The referee directed that the vouchers be returned to his office. By custom, the vouchers were held at the information window of the bank until called for, or until an estate was closed. The clerk of the Bankruptcy Court called for the first set of vouchers a year and a half after the account was opened. The clerk testified that, she merely glanced at the cancelled *657 checks “ to see * * * if both signatures were there ”, not to examine them for authenticity. No examination was made of the vouchers; on the contrary, they were placed in open files available to many persons. The second set of vouchers was not called for until more than two years after the first set was received. The referee testified that he picked up these vouchers personally because of a growing suspicion about the trustee. It was then that he notified the bank. No record had been made by the referee’s office of the checks countersigned. On the basis of the evidence we find that the depositor failed to do those things which are dictated by ordinary business customs and that, had they been done, an early discovery of the forgeries might have been made, thereby preventing the later misappropriations.
Was the bank itself negligent? A comparison of the forged and genuine signatures shows that each forgery was reasonably skillful. Each check, on its face, purported to be drawn for a legitimate payment of the trustee’s expenses. This was not the common case where a trustee makes a large deposit, withdrawn from trust funds, to his own credit in a personal account. The bank, as to the last four checks, might easily have felt secure in the absence of knowledge that the preceding checks had been forged. We find that the bank was not negligent in its handling of the account. It should be noted that, according to the testimony of the clerk of the Bankruptcy Court, even when the bank mailed vouchers in an account to the referee instead of holding them at the information window, it was the custom to place them in the files without more than cursory examination Until the estate was closed.
We therefore find that the negligence of the depositor precludes recovery on the remaining checks. As was the case with the first defense, the finding is applicable to each of the consolidated actions for the reasons stated in our former opinion.
The actions were tried before the court on a stipulation that the jury be waived and that the court direct a verdict with the same force and effect as though a jury were present. The judgment appealed from should be reversed on the law and facts, with costs, and judgment directed in favor of the defendant, with costs, in both actions.
All concur, Love, J., not voting. Present — Taylor, P. J., Harris, MoCurn, Larkin and Love, JJ.
Judgment reversed on the law and facts, with costs, and judgment directed in favor of the defendant, with costs.